THE STATE EX REL. LARKIN vs. RYAN, Court Commissioner.

*January 17 — February 28, 1888.*

Constitutional law: Due process of law: Confinement of inebriates: Habeas corpus.

1. Ch. 194, Laws of 1887 (providing that any person charged with being an inebriate, habitual or common drunkard, shall be arrested and brought before a judge of a court of record for trial, and if convicted shall be sentenced to imprisonment or confinement in any inebriate or insane asylum in this state for a period not exceeding two years nor less than three months, provided some relative or friend shall execute a bond conditioned that he will pay for the support of such inebriate, habitual or common drunkard during his imprisonment and confinement), is in violation of sec. 1, art. XIV, Amend. Const. of U. S., which provides that no state shall deprive any person of liberty *without due process of law*, nor deny to any person the *equal protection of the laws.*

2. A person convicted and confined under that act may be discharged on a writ of *habeas corpus* issued by a court commissioner.

CERTIORARI. The following statement of the case was prepared by Mr. Justice CASSODAY:

May 5, 1887, the relator was committed to the insane asylum, under ch. 194, Laws of 1887, and by virtue of the following commitment, to wit:

*The State of Wisconsin, to the Superintendent of the Milwaukee Insane Asylum, greeting:* Whereas, heretofore

Charles H. Larkin, by his complaint in writing addressed to Hon. JAMES A. MALLORY, judge of the municipal court of the city and county of Milwaukee, being a court of record within said county, charged his son, *Courtland P. Larkin*, with being an inebriate, habitual or common drunkard; and whereas, upon said complaint the said *Courtland P. Larkin* was arrested and brought before the said Hon. JAMES A. MALLORY, judge of said municipal court, for trial, and a trial of such charge duly had before the said judge and a jury, as demanded by the said *Courtland P. Larkin;* and whereas, upon such trial the said *Courtland P. Larkin* was convicted of being an inebriate, habitual and common drunkard; and whereas, before any sentence upon such conviction, the said Charles H. Larkin did execute a bond to the state of Wisconsin, in the sum of one thousand dollars, with sufficient surety, which bond was approved by the said judge, conditioned that he would pay for the support and treatment of said *Courtland P. Larkin*, such inebriate, habitual and common drunkard, during his confinement, as required by law; and whereas, the said Hon. JAMES A. MALLORY, judge of the municipal court of the city and county of Milwaukee, did upon such conviction on this day sentence the said *Courtland P. Larkin* to confinement in the Milwaukee county insane asylum, situate in the county of Milwaukee and state of Wisconsin, for the period of two years from this date: Therefore, in the name of the state of Wisconsin, you are hereby commanded to receive the said *Courtland P. Larkin* into the said Milwaukee county insane asylum, pursuant to said sentence, and there confine him for the period of two years from this date, unless he should sooner be discharged pursuant to law. Given under my hand at the city of Milwaukee, this 5th day of May, 1887. JAMES A. MALLORY, Judge of the Municipal Court of the City and County of Milwaukee. [Municipal court seal of Milwaukee county.]"

Some months after such commitment, and upon the peti-
tion of said relator to the effect that he was unlawfully de-
tained of his liberty, in that said ch. 194, Laws of 1887, was
unconstitutional and void, he was brought before said court
commissioner by the superintendent of the asylum having
him in custody, upon a writ of *habeas corpus;* and, after a
hearing had thereon, the motion of said relator to be dis-
charged from such custody was denied by said commissioner,
and he was thereupon remanded by said commissioner to
the custody of said superintendent. Thereupon, and in
pursuance of a writ of *certiorari* issued by this court, De-
cember 3, 1887, the said commissioner certified to this court
all and several "the proceedings, writs, orders, and all
things pertaining thereto in the matter" of said *habeas
corpus.*

For the relator there was a brief by *Austin, Runkel &
Austin,* and oral argument by *Mr. W. H. Austin.* They
argued, among other things, that it was the duty of the
court commissioner issuing the writ of *habeas corpus* to in-
quire as to the jurisdiction of the committing court, and, if
that court had no jurisdiction by reason of the unconstitu-
tionality of the law or otherwise, to discharge the prisoner.
*In re Crandall,* 34 Wis. 177; *In re Blair,* 4 id. 522; *In re
O'Connor,* 6 id. 288; *In re Perry,* 30 id. 268; *People v. Cas-
sels,* 5 Hill, 164; *People ex rel. Tweed v. Liscomb,* 60 N. Y.
559; *In re Crow,* 60 Wis. 349. Ch. 194, Laws of 1887, is
partial or special legislation, discriminating between those
who are and those who are not able to give the bond men-
tioned. It is therefore in violation of sec. 9, art. I, Const. of
Wis. See *Durkee v. Janesville,* 28 Wis. 471; *Bank of the
State v. Cooper,* 2 Yerg. 599; Cooley's Const. Lim. 392, 431;
*Holden v. James,* 11 Mass. 396; *Davison v. Johonnot,* 7 Met.
393; *Teft v. Teft,* 3 Mich. 67; *Bull v. Conroe,* 13 Wis. 238,
244; *Lewis v. Webb,* 3 Me. 336; *Budd v. State,* 3 Humph.
483; *Wally's Heirs v. Kennedy,* 2 Yerg. 554. The act is

void, also, under sec. 1 of the 14th amendment to the federal constitution. It is void, too, under sec. 6, art. I, Const. of Wis., forbidding the infliction of cruel and unusual punishments.

For the respondent there was a brief by *Jenkins, Winkler & Smith,* and oral argument by *Mr. Winkler.* They contended, *inter alia,* that it was not competent for the court commissioner to inquire into the constitutionality of the law on this *habeas corpus,* issued after conviction. *In re Underwood,* 30 Mich. 502. It is conceded that such inquiry might be made on a writ issued *before* conviction, as was done in *In re Booth,* 3 Wis. 1, though there are authorities to the contrary. *In re Harris,* 47 Mo. 164; *People v. Martin,* 1 Park. Crim. Cas. 187. The act is not unconstitutional. Inebriates may be put under restraint. The very old practice of appointing a committee is an imprisonment. *In re Lynch,* 5 Paige, 120. The necessity of providing for the care of such persons has long been recognized. *Milwaukee Ind. School v. Milwaukee Co.* 40 Wis. 328, 331; R. S. sec. 3978; R. S. 1858, ch. 112, secs. 17, 18; R. S. 1849, ch. 80, secs. 16, 17; Terr. Stats. 1839, p. 285, sec. 26. If they are the proper subjects of restraint, the nature and extent of that restraint must be a matter of legislative discretion. See *Milwaukee Ind. School v. Milwaukee Co.* 40 Wis. 328; *Petition of Ferrier,* 103 Ill. 367; *In re Hoag,* 7 Paige, 312; *Wadsworth v. Sharpsteen,* 8 N. Y. 388; *L'Amoureux v. Crosby,* 2 Paige, 422; *Imhoff v. Witmer,* 31 Pa. St. 243. The act is not unequal or partial in its operation. *Bumsted v. Govern,* 47 N. J. Law, 368; *State ex rel. Bingham v. Gibbs,* 46 id. 513, 515. It does not inflict any *punishment,* and the treatment of the inebriate under it is not "cruel or unusual," within the meaning of sec. 6, art. I, Const. of Wis. *In re Bayard,* 25 Hun, 549; Cooley's Const. Lim. 329; Story on Const. Law, sec. 1903; Cooley on Const. Law, 296.

CASSODAY, J. The relator's right to a discharge depends upon the validity of ch. 194, Laws of 1887, under which he was arrested, tried, convicted, and sentenced to confinement for the period of two years. This act is certainly anomalous. It is entitled " An act relating to inebriates and habitual drunkards." The language of the act, however, leaves it somewhat doubtful whether it should be regarded as penal or paternal. If it is to be regarded as penal, then its validity would seem to turn upon widely different considerations than if it were paternal; and if it is to be regarded as paternal, then its validity would seem to turn upon widely different considerations than if it were penal. It reads: "Any person who shall be *charged* upon the complaint of another with being an *inebriate, habitual or common drunkard* shall be *arrested* and brought *before a judge* of a court of record *for trial in the same manner that offenders* may be arrested and brought to trial before a justice of the peace; and if he shall be *convicted* of being an inebriate, habitual or common drunkard, he shall be *sentenced to imprisonment or confinement* in any inebriate or insane asylum in this state, for a period not exceeding two years, nor less than three months: *provided,* however, that before such sentence some relative or friend of such inebriate, habitual or common drunkard, shall execute a bond in the sum of $1,000, with sufficient surety, to be approved by such judge, to the state of Wisconsin, conditioned that he will pay for the support and treatment of such inebriate, habitual or common drunkard during his imprisonment and confinement."

1. Is it penal? And, if so, is it a valid enactment? The words " charged," " arrested," " for trial," as " offenders," " convicted," and " sentenced to imprisonment or confinement " " for a period " to be definitely fixed, would seem to indicate an intention to make it a criminal offense to be " an inebriate, habitual or common drunkard," under any and all circumstances.

The [police powers of the state are certainly not only sweeping, but potential, when legitimately exercised. According to the more recent utterances of the supreme court of the United States, even the late amendments to the federal constitution were not "designed to interfere with the power of the state, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the state, develop its resources, and add to its wealth and prosperity." *Barbier v. Connolly*, 113 U. S. 31, per FIELD, J. This language was expressly sanctioned by Mr. Justice HARLAN, speaking for the court, in the very recent case of *Mugler v. Kansas*, 123 U. S. 663. In a recent work on the Limitations of Police Power, it is, in effect, asserted that there can be no lawful punishment of mere drunkenness, so long as it is concealed in strict privacy, without any exposure to or interference with the public or any individual. Tied. Lim. Police Power, 302. In other words, that strictly private and concealed vice of the individual cannot be lawfully made a public offense. The language of the act in question would certainly admit of such conviction without such exposure or publicity. But we are not called upon to determine whether the act is invalid for that reason, unless we should conclude that the act must be regarded as a penal statute,— a question which will presently be determined. If to be "an inebriate, habitual or common drunkard" was intended to be made a criminal offense by the act, then it should have provided for or recognized the right of a "public trial by an impartial jury of the county or district wherein the offense" should be "committed; which county or district" should "have been previously ascertained by law." Sec. 7, art. I, Const. Wis. The right to such "public trial" thus secured is manifestly a trial by jury *in a court of law*, having jurisdiction by virtue of law. The fact that no such trial is given

and no such jurisdiction is conferred or recognized in the act in question, constrains us to believe that it never was designed, and if it was, that it cannot be regarded, as a valid penal statute. The ·act, in substance, provides that any person so charged "shall be arrested and brought before *a judge of a court of record* for trial," and if convicted, and the requisite bond given, " he shall be sentenced," etc. We understand this to mean any judge of any court of record in the state, and even at chambers. True, this relator was so brought before the "judge of the municipal court of the city and county of Milwaukee, *being a court of record* within said county." This is recited in the commitment. So it is recited therein that the complaint so charging the relator, was "addressed to " said judge (naming and describing him) and that " upon said complaint, the said " relator " was arrested and brought before the said " judge (again naming and describing him) " for trial," and that " a trial of such charge " was " duly had before the said judge and a jury, as demanded by the said " relator; and that " upon such trial the said " relator " was convicted of being an inebriate, habitual and common drunkard;" and that upon the bond being given, " the said " judge (again naming and describing him) " did, upon such conviction, . . . sentence the said " relator " to confinement . . . for the period of two years," etc. There is nothing in the commitment from which it can be inferred that such municipal court took or assumed to take jurisdiction of the matter so charged, nor that such trial was in or by said court. On the contrary, it appears throughout the commitment that the judge of said municipal court acted as such judge, and only by reason of the authority supposed to be given to him as " a judge of a court of record " by virtue of said act. The same language applies with equal force to a judge of a county court, or a circuit court, or even of this court. And yet we apprehend that no one would claim that the legisla-

JANUARY TERM, 1888. 683

The State ex rel. Larkin vs. Ryan, Court Commissioner.

ture had power to authorize a member of this court to take original jurisdiction in the trial of a criminal offense. Nor could the legislature lawfully authorize the trial of such criminal offense before and by a judge at chambers. And yet the act gave to the judge of the municipal court, sitting merely as "a judge of a court of record," no other or greater powers than are therein given to any judge of any other court of record, and hence, at most, not exceeding such powers as may be lawfully exercised by any judge of a court of record at chambers. If the legislature could lawfully authorize the trial of criminal offenses by and before such judge at chambers, then it could effectually leave the person so charged and convicted without any remedy by writ of error, which is only authorized to review final judgments in actions triable by jury as a matter of right. *Crocker v. State*, 60 Wis. 553. But the constitution provides that in such actions "writs of error shall never be prohibited by law." *Ibid.;* sec. 21, art. I, Const. Wis. We must, therefore, conclude that the act was not designed to be a penal statute, and that if it is one in fact, it must to that extent be regarded as inoperative.

2. Is the act in question paternal? And, if so, is it a valid enactment? Upon the argument it seemed to be conceded on both sides that the act was designed wholly for the benefit and good of such unfortunate persons as might be liable to such charge. In fact the learned counsel in behalf of such detention likened the act to the early statute of New York, which gave to the court of chancery custody and control of the person as well as the estate of an habitual drunkard. *In re Lynch*, 5 Paige, 120. It was there said that such powers of the court of chancery were, by such statute, "put precisely upon the same ground as its powers over the persons and estates of idiots and lunatics." In that case the person in custody had been "found to be incapable of conducting her own affairs, by reason of habitual drunk-

enness." The chancellor said: "Whenever the court is satisfied she has so far reformed that there is no danger of a relapse, the committee will be discharged, and her estate will be restored to her." It was thereupon ordered in conformity to the "decision, subject, however, to be modified by the vice-chancellor from time to time" as he might judge expedient, etc. Our general statute provides, in effect, that "when any person, by excessive drinking, *shall be unable to attend to business, or shall be lost to self-control,* and shall thereby greatly endanger his health, life, or property, or shall be an unsafe person to remain at large, or shall, by gaming, idleness, or debauchery of any kind, so spend, waste, or lessen his estate as to endanger his own or his family's support, or expose the town to charge or expense for such support," and the proper verified petition setting forth the facts and circumstances of the case be presented to and filed with the county court; and if, after due notice and a "full hearing, it shall appear to the court proper under this section, such court shall appoint a guardian of his person and estate, with the powers and duties hereinafter specified. The county court shall have power to authorize or direct the guardian of any such person named in this section to commit such person to any inebriate asylum . . . for a term not exceeding two years. *Such person may be discharged at any time* by order of the same court." Sec. 3978, R. S. A similar statute is in force in the city of New York, providing also for such discharge whenever the cause for such detention is removed. Knapp's Law relating to the P. I. I. & Habitual Drunkards, pp. 100–102.

These statutes all go upon the theory of personal disability, or want of self-control, which exposes the victim or others to danger, or his estate to loss. These conditions create the necessity of intervention by the state through its authorized agency, as the needed physician — the Good Samaritan — the temporary guardian. The purpose of such

JANUARY TERM, 1888. 685

The State ex rel. Larkin vs. Ryan, Court Commissioner.

guardianship is humane, beneficent, and paternal, but the lawful right to its continuance is limited to the period of such disability or want of self-control. Since the only right of such confinement springs from the necessities resulting from such conditions, the removal of the conditions, and hence the necessities, when judicially ascertained, terminates the right. Tied. Lim. Police Powers, 114, 116, § 46, and cases there cited.

But the act in question goes upon an entirely different theory. According to it, " any person . . . being an inebriate, habitual or common drunkard," may be convicted thereof, and if " some relative or friend " gives the requisite bond, he must " be sentenced to imprisonment or confinement " for a period to be definitely fixed by the judge, within certain limits. Such conviction is not made dependent upon his inability to attend to business, nor upon any want of self-control, nor upon his being dangerous to himself or others, but solely upon his " being an inebriate, habitual or common drunkard." Just what would make a person such is not very clearly defined. Manifestly, it was intended that the drunkenness should be repeated to the extent of becoming habitual, but just how frequently it should occcur, or the extent of the delirium or stupefaction, is left as a matter of fact to be determined by those who might differ widely in regard to it. Such habit might exist, and yet the victim be kind and generous hearted, fully capable of attending to his business, gradually increasing his estate, tenderly providing for the wants of any dependent upon him, and without at all endangering the personal safety of himself or others. Such may be the condition of this relator for aught that appears in this record. True, his condition may be so deplorable as to require confinement under the general statute mentioned, or even such as to properly call for punishment. But, as we have seen, such is not the purpose of the act in question. The relator

has never been convicted of any penal offense known to the law, even before a judge at chambers, much less in any court of law.  The purpose of the act is not to guard merely during disability or want of self-control or danger of personal safety, but to imprison for a fixed period, without the commission of any penal offense, or any trial in a court of law, merely by reason of the existence of the condition named, and to satisfy the act and the " relative or friend" who kindly furnishes the requisite bond.  Besides, the act contemplates no restoration,— no possibility of reformation within the time thus arbitrarily fixed.  Not having been convicted of any offense known to the law, it would seem that he is beyond the reach of executive clemency.  Sec. 6, art. V, Const. Wis.

From what has been said it appears that the relator stands before the court innocent of any offense known to the law, and yet committed " to imprisonment or confinement" for the period of two years, upon a commitment issued by a judge at chambers, and without any authorized process from any court of law.  If the legislature may thus authorize imprisonment for two years, without the commission of any offense made punishable by law, then it may do so for ten or twenty years.  It is the question of power, merely, with which we are concerned.  While the state should take compassionate charge of any who are dangerous to themselves or others, it is equally bound to protect the personal rights and liberties of every harmless and law-abiding citizen, capable of taking care of himself, his family, and his property, however weak and unfortunate he may be in other respects.  So sacred are certain rights of the citizen that they are especially guarded by our national constitution; which, among other things, declares that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any state deprive* any person of life, *liberty,* or

The State ex rel. Larkin vs. Ryan, Court Commissioner.

property, *without due process of law; nor deny to any person* within its jurisdiction *the equal protection of the laws."* Sec. 1, art. XIV, Amend. Const. U. S.   In *Mugler v. Kansas*, 123 U. S. 663, it is said by the court:  " Undoubtedly the state, when providing by legislation for the protection of the public health, the public morals, or the public safety, is subject to the paramount authority of the constitution of the United States, and may not violate rights secured or guarantied by that instrument, or interfere with the execution of the powers confided to the general government." As indicated, the act in question does not proceed upon the theory of protecting the *public* health, nor the *public* morals, nor the *public* safety, nor the *personal* safety of the victim, nor as a *punishment* for crime.   On the contrary, it proceeds upon the sole theory that the victim may be arrested, brought before a judge of a court of record at chambers, and, if found by him to be " an inebriate, habitual or common drunkard," he may, without the existence of any other fact or condition, and without any trial in any court of law, imprison him for two years, without any provision for his release.

We are forced to the conclusion that the relator has been deprived of his liberty without due process of law, and denied the equal protection of the law.   *Yick Wo v. Hopkins*, 118 U. S. 356; *In re Ah Jow*, 29 Fed. Rep. 181; *In re Jacobs*, 98 N. Y. 98; *State v. Ray*, 63 N. H. 406, 32 Alb. Law J. 349; *Frazee's Case* (Mich.), 30 N. W. Rep. 72. Under our constitution, the relator was " entitled to a certain remedy in the law " for such injury and wrong.   Sec. 9, art. I.   This entitled him to a discharge.

*By the Court.*— The order of the court commissioner is reversed.