POLLON, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 3—June 4, 1935.*

For the plaintiff in error there was a brief by *Loose & Topolinski,* attorneys, and *Alfred C. Loose* of counsel, all of Milwaukee, and oral argument by *Mr. Loose.*

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, *William A. Zabel,* district attorney of Milwaukee county, and *Paul Stover,* assistant district attorney, and oral argument by *Mr. Stover.*

ROSENBERRY, C. J.   It is the contention of the defendant here that he cannot be convicted of being a common drunk-

ard unless it be shown that he was drunk in a public place; that mere drunkenness in one's private home cannot be made punishable as a crime, for the reason that it is an unreasonable restriction upon the liberty of a citizen.

The material part of sec. 348.351 provides:

"All persons of the classes enumerated in this section, except dependent, neglected, or delinquent children as defined in section 48.01 shall be deemed vagrants, namely:

. . .

"All common drunkards."

The evidence shows without dispute that the defendant was released from confinement, and worked until the 27th day of December, 1933; that he then commenced drinking, went on a hunger strike, refused his meals, and lived on intoxicants until January 5th, when he was sent to a hospital for observation. It also appears that the defendant commenced an action for a divorce against his wife, who was the complaining witness. She testified that her husband was a good provider, a good man, and a perfect gentleman, aside from his drinking.

There is no statutory definition of the term "common drunkard." The matter was adverted to in *State ex rel. Larkin v. Ryan,* 70 Wis. 676, 36 N. W. 823. The court had under consideration an act relating to inebriates, habitual or common drunkards, which provided that any person charged with being an inebriate, habitual or common drunkard might be arrested and confined without a jury trial. The court said:

"In a recent work on the Limitations of Police Power, it is, in effect, asserted that there can be no lawful punishment of mere drunkenness, so long as it is concealed in strict privacy, without any exposure to or interference with the public or any individual. Tied. Lim. Police Power, 302. In other words, that strictly private and concealed vice of the individual cannot be lawfully made a public offense. The language of the act in question would certainly admit of such

conviction without such exposure or publicity. But we are not called upon to determine whether the act is invalid for that reason, unless we should conclude that the act must be regarded as a penal statute,—a question which will presently be determined. If to be 'an inebriate, habitual or common drunkard' was intended to be made a criminal offense by the act, then it should have provided for or recognized the right of a 'public trial by an impartial jury of the county or district wherein the offense' should be 'committed; which county or district' should 'have been previously ascertained by law.' "

Sec. 351.59 provides for the punishment of persons who are found intoxicated in public places. The offense described in sec. 351.59 has no relation to habitual drunkenness. A person might be convicted under that section if he had never been drunk but once, but as a result of it he was found in a public place in such a state of intoxication as to disturb others.

There is some conflict in the cases with respect to the meaning of the word "common" when used with reference to a drunkard. In *Commonwealth v. Whitney*, 5 Gray (71 Mass.), 85, it is said:

"Indeed the terms 'drunkard' and 'habitual drunkard' mean the same thing. . . . The word 'common' would seem to be used in the sense of public."

In a later case, *Commonwealth v. McNamee*, 112 Mass. 285, it was said:

"The use of the word 'common' imports frequency, and it has been held that to convict a man upon such a charge, it must be shown that he is an habitual drunkard."

In *State ex rel. Attorney General v. Savage*, 89 Ala. 1, 7 So. 7, 183, 7 L. R. A. 426, it is said:

"The two phrases, 'habitual drunkard' and 'common drunkard,' have been held in some states to be synonymous in meaning. . . . Either of the expressions may, in general terms, be defined as meaning one who drinks intoxicating

liquors, to excess, with habitual frequency. Indulgence by a person, on the one hand, in occasional acts of drunkenness, would not be sufficient to bring him within the sphere of this definition; nor, on the other hand, need he be constantly drunk every day or week in a year."

In some states the statutes define what is meant by a "common drunkard." *State v. Flynn,* 16 R. I. 10, 11 Atl. 170. See 19 C. J. p. 803, and cases cited; 25 R. C. L. Habitual Drunkard, p. 359. See also 2 Words and Phrases (First Series), 1321; 4 Words and Phrases (First Series), 3204.

It is apparent that, by providing for the punishment of a common drunkard as a vagrant, the legislature intended something in addition to punishment for the offense of being intoxicated in a public place. This brings us to a consideration of whether or not a person given to common or habitual drunkenness can be punished as a misdemeanant. The first statute punishing drunkenness as a misdemeanor is to be found in 4th year James, ch. 5 (1606). That statute provided:

"That all and every person or persons, which after forty days next following the end of this present session of parliament, shall be drunk, and of the same offence of drunkenness shall be lawfully convicted, shall for every such offence forfeit," etc.

Sec. 4 of that act provided penalty for continued drinking or tipling in an alehouse, victualing house, or any inn. See also 4 Holdsworth, History of English Law, 514. This act of parliament was followed by subsequent acts in an attempt to do away with "the loathsome and odious sin of drunkenness." The term "common drunkard" does not seem to be a part of the English law. The Habitual Drunkards Act of 1879 (42 and 43 Vict. ch. 19, s. 3), however, defines habitual drunkenness as follows:

"A person who, not being amenable to any jurisdiction in lunacy, is notwithstanding, by reason of habitual intem-

perate drinking of intoxicating liquor, at times dangerous to himself or herself or others, or incapable of managing himself or herself, and his or her affairs." 9 Halsbury's Laws of England (2d ed.), 241.

While the later acts of parliament do not treat habitual drunkenness as a crime, but as something in the nature of mental disability or mental disease, that fact affords no guide for the interpretation of the statute under consideration.

The defendant relies principally upon two cases,—*Parshall v. State,* 62 Tex. Cr. Rep. 177, 138 S. W. 759, and *Commonwealth v. Whitney, supra.* The Texas case squarely supports defendant's contention. *Commonwealth v. Whitney* is very much weakened by the subsequent decision of *Commonwealth v. McNamee, supra.* The argument of the defendant is that only that which disturbs the public or interferes with public rights can be made a crime or misdemeanor; that under the constitution, and from the time of the Magna Charta down, a man's home has been his castle; that he, being the master of his home and so the lord of his castle, may act within his home as he chooses; that, though other members of the family may be offended, it does not constitute a public offense; that to punish a man for being drunk in his home deprives him in some way of a constitutional right. It is difficult to understand why under a constitution which permits punishment for attempted suicide (60 C. J. p. 997), a man may not be restrained from doing those acts which may eventually completely disable him or in many instances result in his death. While no doubt a man has a greater degree of freedom within the precincts of his home than he has in a public place, that is because he is not required to take into account the rights of so many other people. It is true, as defendant argues, that at common law one could not be indicted for drunkenness until his conduct amounted to a nuisance, which of course involves

the disturbance of the public. He is not here indicted under the common law but under the statute, and the sole question is whether or not the legislature has the power to punish him as a misdemeanant under the facts of this case. It is considered that it has such power. There is no doubt that a person who has become violent or dangerous because of the excessive use of intoxicants can be restrained of his liberty under the provisions relating to insane persons. There is no sound reason why, in the interest of the public welfare, the state may not seek to avoid such consequences by punishing a man given to the habitual use of intoxicating liquor in excess before he has reduced himself to a state of mind where he is no longer morally responsible. There is no reason, too, why the state may not protect other members of the family from the consequences of the defendant's acts as well as other members of the general public. In most cases the interests of the members of the family are more important than the right of the public not to be disturbed. In the light of the authorities we cannot subscribe to the doctrine of the Texas case.

While the court expressed some doubt in *State ex rel. Larkin v. Ryan, supra,* based on the statement contained in Tied. Lim. Police Power, 302, we find no authority cited in that work in support of the proposition there stated, and, as the court there said, no attempt was made to determine the question here under consideration.

*By the Court.*—Judgment affirmed.