168 Cal.App.2d Supp. 788 (1959)
THE PEOPLE, Appellant,
v.
AUGUST LEE DANIEL, Respondent.
California Court of Appeals. 
Feb. 16, 1959.
 Frank S. Pierson, District Attorney (Stanislaus), and Gerald R. Douglas, Deputy District Attorney, for Appellant.
 George Mellis and Mellis & Stockton for Respondent.
 CHAMBERLAIN, J.
 The defendant August Lee Daniel hereafter called the defendant, was charged with being a "common drunkard" in violation of subdivision 11 of section 647 of the California Penal Code, known as the vagrancy statute.
 He has never been arraigned. His counsel moved the court to dismiss the action upon the grounds that the court did not have jurisdiction of the matter, and that the statute under which he was charged is unconstitutional. The court dismissed the action, and filed a written opinion stating that he found the statute in question unconstitutional and in violation of due process of law. From that decision the People have appealed to this court pursuant to the authority of subdivision 1(a) of section 1466 of the Penal Code. If we should find the trial court to have been in error, the proper proceeding is to reverse and remand the case to the trial court for further proceedings. (People v. Ring, 26 Cal.App.2d Supp. 768 [70 P.2d 281]; People v. Smith, 133 Cal.App.2d Supp. 777 [284 P.2d 203]; People v. Sevel, 122 Cal.App.2d Supp. 907 [261 P.2d 359]; People v. Garner, 120 Cal.App.2d Supp. 923 [264 P.2d 672].)
 The question presented for our determination is whether or not subdivision 11 of section 647, Penal Code, defining vagrancy, is so uncertain, indefinite, or ambiguous as to violate the due process provisions of the United States Constitution as set forth in the Fourteenth Amendment, or of course, similar provisions in the Constitution of the State of California. Subdivision 11 of said section declares that every "common drunkard" is a vagrant.
 The matter has been exhaustively briefed by both parties, and so many authorities have been cited that the task of even [168 Cal.App.2d Supp. 791] coordinating them has been Herculean. They range in time from the delivery of the commandments and laws to his people by Moses as related in Deuteronomy, wherein he advises his people to take the stubborn and rebellious son without the walls of the city and stone him to death as a glutton and a drunkard (emphasis added) so that they shall purge the evil from their midst, and all Israel should hear and fear. They cover the entire English speaking world from the ancient common law to the present date. It would be tedious, and in our opinion, unnecessary to here attempt any detailed discussion of these authorities, but from them we have selected a number which should be sufficient for the determination of this question. These we will shortly cite. But we desire first to state that we realize our appellate jurisdiction has limitations, both in territory and in authority, and that we offer our opinion and conclusion largely for whatever assistance it may be to other or higher jurisdictions in which the same or a similar question may be presented and because we consider the question to be of general and widespread interest.
 First, we will refer to the learned discussion of the broad aspects of this problem in 62 Harvard Law Review, page 76, published in 1949. The authorities cited there are almost exclusively decisions of the United States Supreme Court. The guiding principles stated are sound and have been followed by practically all of the cases cited from American jurisdictions, including those from California which we will hereafter mention. For brevity we will not attempt to analyze the article here, but it is recommended as basic reading. The phrase "common drunkard" is not mentioned therein.
 We will next refer to an article entitled "Who is a Vagrant in California?" in 23 California Law Review page 506, published in 1935, which we also recommend to the reader. This article, as its title indicates, deals with the vagrancy statute of the State of California, particularly with reference to the element of uncertainty and ambiguity of the provisions of subdivisions 1, 3, 5, and 6 of section 647, but offers no criticism of subdivision 11 relating to "common drunkards," which is the subject of the present inquiry.
 That article was answered by Judge Alden Ames of the San Francisco Municipal Court in an article at page 616 of the same volume 23 California Law Review. He calls attention to the useful function which the vagrancy statute has performed in this state, even though it may have been at times subject to some abuse, and states at the end of his article, that [168 Cal.App.2d Supp. 792] he would personally recommend and support any proposals or suggestions which would meet the difficulties mentioned in the article which he answers, provided that the fundamental purposes and objects of the statute, which he endeavored to point out, would still remain. Again there is no mention of subdivision 11.
 We will next refer to an article on vagrancy in volume 39 California Law Review, page 579, published in 1951. The author deals partly with the single offense theory, and also to some extent with some evidentiary problems, but does not mention subdivision 11 of that section. He concludes with the following suggestion or recommendation, to wit: "The courts, while continuing to clarify the statute should strive to follow a philosophy and interpretation that will keep the use of this statute in the penumbra between abusive disregard of personal rights and the practical needs of police agencies in protecting society."
 We will now cite a number of California cases which set forth rules to be followed in the determination of the question before us. These cases and some others we will later discuss in a little more detail. The cases are: Lorenson v. Superior Court, 35 Cal.2d 49 [216 P.2d 859]; People v. Deibert, 117 Cal.App.2d 410 [256 P.2d 355]; People v. Ring, 26 Cal.App.2d Supp. 768 [70 P.2d 281]; People v. Smith, 36 Cal.App.2d Supp. 748 [92 P.2d 1039]; People v. De Leon, 35 Cal.App.2d 467 [170 P. 173]; People v. Nunn, 46 Cal.2d 460 [296 P.2d 813]. By examination and correlation of these articles and cases we believe that the rules to be applied can be quite fully and correctly stated.
 [1] The basic or fundamental requirement of a statute is that it should be sufficiently definite to: 1. Guide the individual in planning his own future conduct. 2. And guide (the court and counsel) in the adjudication of rights and duties. (62 Harv.L.Rev. p. 77; Lorenson v. Superior Court, 35 Cal.2d 49 [216 P.2d 859].)
 To show the matters which should be considered in determining the sufficiency in a particular case, we will cite and quote from the California decisions mentioned above and some others. In quoting, we will, for brevity, omit citations.
 In Lorenson v. Superior Court, 35 Cal.2d 49 [216 P.2d 859], (a leading case) defendant and others were charged with and convicted of conspiracy to commit certain named crimes and "to pervert or obstruct justice or the due administration of the laws." Defendant claimed the quoted part of the charge [168 Cal.App.2d Supp. 793] was void for uncertainty and ambiguity. [2] In denying the claim, the court said, "To comply with the constitutional requirement of due process of law the crime for which a defendant is being prosecuted must be clearly defined. It is only necessary that the words used in the statute be well enough known to enable those persons within its reach to understand and correctly apply them. [3] 'To make a statute sufficiently certain to comply with constitutional requirements it is not necessary that it furnish detailed plans and specifications of the acts or conduct prohibited.' [4] Although higher standards of certainty will be required of penal than of civil statutes, a statute is sufficiently certain if it employs words of long usage or with a common law meaning notwithstanding an element of degree in the definition as to which estimates might differ. For example, the courts have upheld statutes employing such terms as 'to make diligent effort to find the owner,' 'unreasonable speed,' 'unjustifiable physical pain or mental suffering,' 'practice law,' and 'to the annoyance of any other person.' Considering the well settled meaning at common law, the words 'to pervert' or 'obstruct justice' or 'the due administration of the laws' the other and more specific provisions in the Penal Code concerning crimes against public justice and the relative certainty of words employed in statutes which have been held valid, it cannot be said that subsection 5 of section 182 of the Penal Code is unconstitutional. For substantially the same reasons the indictment against Lorenson is not 'vague,' 'indefinite,' or 'uncertain,' and it complies with the statutory requirement for such an accusation. Section 952 of the Penal Code allows an indictment to be stated in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is accused. Lorenson was indicted in the terms of the enactment describing the event and the Grand Jury has fairly informed him of the events of which he is accused to the extent he will be able to defend himself."
 There was a dissenting opinion solely on ground of insufficiency of the evidence.
 People v. Deibert, 117 Cal.App.2d 410 [256 P.2d 355] cites and follows the Lorenson case. The charge was contributing. The court said: "Defendants attack the constitutionality of section 702 of the Welfare and Institutions Code as applied in the instant case, asserting that it is too vague, indefinite, and uncertain to form the basis of a criminal charge and hence [168 Cal.App.2d Supp. 794] invalid under the due process clause of the Fourteenth Amendment to the Constitution of the United States. They contend that the words 'dissolute' and 'immoral' contained in the language of the statute and incorporated in the charging clause of the information are not sufficiently definite to inform those subject to its sanctions what type of conduct is thereby denounced. This challenge is not well taken. [5] Where a statute contains a reasonably adequate disclosure of the legislative intent regarding an evil to be combated in language giving fair notice of the practices to be avoided, the court will be slow to say that such a statute is too indefinite to be enforced. [6] The complexities of the social problems dealt with by the Legislature require that a practical construction be given to the language employed by the draftsmen of legislation less their purposes be too easily nullified by overrefined inquiries into the meanings of words. [7] Reasonable certainty, in view of the conditions, is all that is required, and liberal effect is always to be given to the legislative intent when possible. The use of words of general meaning is the essence of our code system. Thus, in a sphere so vital to the community as the welfare of its youth, the words used in a statute designed to enable the Legislature to come to grips effectively with the problems of juvenile delinquency should be upheld where their frequent use in penal statutes gives assurance that they are understood by men of ordinary intelligence. To comply with the constitutional requirement of due process of law, a crime for which a defendant is being prosecuted, must be clearly defined, but it is only necessary that the words used in the statute be well enough known to enable those persons within its reach to understand and correctly apply them. 'To make a statute sufficiently certain to comply with constitutional requirements it is not necessary that it furnish detailed plans and specifications of the acts or conduct prohibited.' Although higher standards of certainty will be required of penal than of civil statutes, a statute is sufficiently certain if it employs words of long usage or with common law meaning, 'notwithstanding an element of degree in the definition as to which estimates might differ (citations).' (Lorenson v. Superior Court, 35 Cal.2d 49 [216 P.2d 859].)" (Hearing denied by Supreme Court.)
 In People v. Ring, 26 Cal.App.2d Supp. 768 [70 P.2d 281], the charge was the "unlawful practice of law." The court held those words sufficiently plain and clear to meet the constitutional requirement. In so holding, the court stated: "The [168 Cal.App.2d Supp. 795] phrase 'practicing law' or its equivalent 'the practice of law' has long had a sufficiently definite meaning throughout this country to be given a place in constitutional and statutory law without further definition. ... [8] Words used in creating a statutory crime do not fail of such certainty merely because the offense when viewed through them may not have all the precision in outline of a geometrical figure; if the main and central part of the field of view is clear, some slight lack of definition around its outer edges is not fatal. [9] General terms may be used in a statute to describe things according to the common understanding of such terms."
 People v. De Leon, 35 Cal.App. 467 [170 P. 173] was another charge of contributing to the delinquency of a minor and there too objection was made to the sufficiency of the words "idle," "dissolute," "lewd," or "immoral." The court overruled their claim and held the words to be sufficiently definite and certain, and said: "We do not deem it necessary or proper to give to the foregoing clause of the information or the foregoing provisions of the juvenile court law the narrow and restricted construction for which the appellant herein contends. The evident object and main purpose of the juvenile court law was not so much punitive as it was preventive. Its intent was to put a barrier across the threshold of those entrances to downwards ways which are open before the feet of youth." Then after stating its views, and in answer to some of the defendants' arguments, the court made this significant statement: "These views are directly applicable to the case and question before us in the light of the suggestions of appellant's counsel as to its possible application to supposititious cases wherein acts innocent in themselves might be held criminal according to the whim or prejudice of some judge or jury. It is not by such extreme or fanciful standards that the validity of the statute is to be determined, but rather by the reasonableness of its application to cases like the instant one, wherein the act or omission of the defendant amounts to the breach of a definite legal duty, and is of such a nature and tendency as to affect directly the welfare of the minor." (Hearing denied by Supreme Court.)
 In People v. Nunn, 46 Cal.2d 460 [296 P.2d 813], the defendant, a physician, was convicted of four charges of unlawfully prescribing narcotics (Health & Saf. Code, 11163) and one of prescribing narcotics to an addict ( 11164). Defendant questioned the sufficiency of such words and phrases used in the act, as "except in the regular practice of his profession," [168 Cal.App.2d Supp. 796] "good faith," and "addict." [10] The court held the words to be sufficient, citing cases, including the Lorenson case, and made the following significant statement: "A liberal construction should be given constitutional provisions in order to sustain legislative enactments, and all doubts and uncertainties arising from the Constitution, as well as the statute, should be resolved in favor of the validity of the statute." (Dissenting opinion on ground of entrapment. Rehearing denied. One dissent.)
 Relating to the matter of uncertainty where the question of degree might be important we will quote from People v. Smith, 36 Cal.App.2d Supp. 748 [92 P.2d 1039] as follows: "The law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some degree of care." That case then cites a number of cases where laws containing some uncertainty of degree were upheld.
 Defendant relies on the case of Connally v. General Construction Co., 269 U.S. 385 [46 S.Ct. 126, 70 L.Ed. 322] which is cited as a leading case and on People v. McCaughan, 49 Cal.2d 409 [317 P.2d 974]. Examining those cases we find that they conform to the California cases which we have cited. The complaint in the Connally case was that the defendant paid wages "less than the current rate of per diem wages in the locality where the work is performed." The United States Supreme Court held that the determination of the current rate per diem was so involved and so dependent upon so many circumstances, conditions, and factors from time to time that it was a practical impossibility for any person to ascertain what was in fact the current wage. The court did, however, state in the Connally case that a statute should not be held invalid unless after using every possible means the court should find it impossible to give it an intelligent meaning or properly enforce it.
 In the McCaughan case the court approved the words "cruel treatment" and "neglect of duty," but disapproved the words "harsh" and "unkind" treatment, stating as to those words that "It is apparent from the mere recitations of the (dictionary) meanings ascribed to 'harsh' and 'unkind,' most of them indefinite themselves, that men of common intelligence must necessarily guess at the meaning of these words as used in the statute and that they will differ as to their application in a specific situation. The words in question have [168 Cal.App.2d Supp. 797] no established common law meaning. Nor have they any adjudicated meaning."
 We will mention a few cases disapproving some words and phrases in order to show the classification into which many of them fall. The word "picketing" without any further definition or qualification; (In re Harder, 9 Cal.App.2d 153 [49 P.2d 304]); the phrase "frosted to the extent of endangering the reputation of citrus industry if shipped"; (In re Peppers, 189 Cal. 682 [209 P. 896]); provision of the State Housing Act that "every gas burning appliance shall be approved by a nationally recognized testing agency"; (People v. Neff, 117 Cal.App.2d 772 [257 P.2d 47]); the phrase "practices inimical to the public interest"; (People v. Saad, 105 Cal.App.2d Supp. 851 [234 P.2d 785].) It will be noted that the words and phrases used in these cases are associated with the complications of modern business, and in general have not acquired any definite popular meaning, nor been adjudicated, and, of course, are entirely foreign to the common law, and in general are practically wholly unintelligible and impossible to apply.
 From the law review articles and cases cited, the rules to be applied in determining the present question may be summarized as follows: [11] A statute is not necessarily invalid even though in its definition some matter of degree may be involved; it will not generally be held invalid if the language is sufficient to enable the attorney to explain to his client and advise what questions may be left to the determination of the jury, so that he will be able to govern himself accordingly; [12] neither is it necessary that the words have a universally recognized meaning; that the charging words will ordinarily be held sufficient if their meaning can be fairly ascertained by references to similar statutes or other judicial determinations, or by reference to the common law, or to the dictionary, or if the words themselves had a common and generally accepted meaning; [13] that the long continued use of words in a statute without question as to their sufficiency creates a presumption that they have come to be well understood by those to whom they apply. (This reasoning is particularly applicable here because defendant's counsel states that he has been unable to find any case of appellate jurisdiction construing the words "common drunkard" as used in vagrancy statutes.) [14] That the courts will consider the underlying purpose of the law and although it might desire a little more certainty, as a general rule the court will uphold the validity of the statute and interpret it to the best of its ability, particularly when any attempt [168 Cal.App.2d Supp. 798] to make it more specific and certain, would tend to nullify its fundamental purpose. (It may be noted that the vagrancy statute here involved tends to fill what would be a gap in the absence of city or county ordinances on the subject.) Also that reference may be had to similar well known statutes defining the words and phrases, and to prior decisions, if any; [15] that occasional misuse is not by itself sufficient cause to invalidate the law; that although statutory clarification might be desirable, the possibility of thereby nullifying the fundamental purpose of the statute will be considered; that the possibility of a reasonable construction will prevail over mere theoretical grounds of objection; [16] that where the statute involves some matters of degree as to which individuals and even jurors might reasonably disagree in their judgment, the statute will not for that reason alone be invalidated, and this is particularly true where, as here, the statute prohibits an act or condition which is "malum per se" rather than merely "malum prohibitum." In the former, the citizen is bound to anticipate that his continued wrongful acts might, in the individual judgment of the jurors, be deemed unlawful, a result which he can readily avoid by righteous living.
 [17] Applying the foregoing criteria to the words "common drunkard" as used in the vagrancy statute, it is our opinion that they are sufficiently certain and definite to meet the constitutional requirements.
 The words, both singly and conjunctively, have been in common use and generally understood since Moses delivered the commandments and the law to his people, and up to the present time when the words are frequently used decisively to describe a person who is commonly or habitually so intoxicated that his faculties have been impaired, and the words are generally so understood to the extent that they have been practically unquestioned.
 The dictionaries are in substantial accord on the definitions, although some accord to the word "drunk" or "drunkard" alone a meaning which would make the word "common" superfluous. Ballantine's Law Dictionary, second edition (1948), defines drunkenness as "that state or condition which inevitably follows from taking excessive quantities of an intoxicant. It is synonymous with inebriety and inebriation." The same authority defines a "common drunkard" as "a person who drinks intoxicating liquor to excess with habitual frequency." Words and Phrases defines a "drunk" as "a person who is under the influence of liquor to the extent that his passions are [168 Cal.App.2d Supp. 799] visibly excited, or his judgment is impaired by the liquor." Webster's New International Dictionary, unabridged, second edition, defines a "drunkard" as "one who habitually drinks strong liquors immoderately, for example, a toper or a sot." The same dictionary defines the word "drunk" as "under the influence of an intoxicant, especially an alcoholic liquor, so that the use of the faculties is materially impaired. Synonym--inebriate." The same dictionary defines the word "common" as "habitual or notorious, as a common scold or a common thief"; also "of frequent or ordinary occurrence." The American College Dictionary defines the word "common" as "generally or publicly known,--notorious as a common scold; familiar, usual, as a common event." It defines "drunk" as "a drunken person, intoxicated with or as with strong drink." It defines a "drunkard" as "a person who is habitually or frequently drunk." It states that the use of the word "drunkard" connotes wilful indulgence to excess. The Oxford Universal Dictionary defines the word "common" as "generally known," as for example, "a common prostitute"; also as "ordinary, prevalent, frequent, or commonly." It also defines the word "drunkard" as "one addicted to drinking, especially to excess, as an inebriate, a sot." That dictionary also states that these words have been in common use since the sixteenth century. It defines the word "drunken" as "intoxicated, or habitually intemperate," and the word "drunkenness" as "the habit of drinking to excess." We do not see how any person who can read and has access to a dictionary could possibly fail to understand the meaning of the words, "common drunkard." Their common use and the availability of the dictionary definitions furnish everybody with the means of knowing exactly what they mean. They are certainly sufficient to warn every person of the danger which he may incur if he persistently and habitually gets drunk.
 In support of our conclusion but at the risk of redundance, we will cite some California cases (in addition to those hereinbefore mentioned), and the statutory words and phrases which they held sufficient; "make diligent effort to find the owner" (Pacific Coast Dairy v. Police Court, 214 Cal. 688 [8 P.2d 140, 80 A.L.R. 1217]); "unreasonable speed" (Ex Parte Daniels, 183 Cal. 636 [192 P. 442, 21 A.L.R. 1172]); "unjustifiable physical pain or mental suffering" (People v. Curtis, 116 Cal.App. Supp. 771 [300 P. 801]); "to the annoyance of any other person" (People v. Beifuss, 22 Cal.App.2d Supp. 755 [67 P.2d 411]); the phrase "neglect of duty" and "cruel" [168 Cal.App.2d Supp. 800] (People v. McCaughan, 49 Cal.2d 409 [317 P.2d 974]); "criminal syndicalism" (People v. Whitney, 57 Cal.App. 449 [207 P. 698]), approved by the United States Supreme Court in (Whitney v. California, 274 U.S. 357 [47 S.Ct. 641, 71 L.Ed. 1095]); "idle, lewd, or dissolute person" as used in subdivision 5 of the vagrancy statute (In re McCue, 7 Cal.App. 765 [96 P. 110]); "infamous crime against nature" (People v. Williams, 59 Cal. 397]); the words "banking game" and "poker" (People v. Carroll, 80 Cal. 153 [22 P. 129]); the word "loiter" (Phillips v. Municipal Court, 24 Cal.App.2d 453 [75 P.2d 548]); "tending to deceive or mislead the public" (Smulson v. Dental Examiners, 47 Cal.App.2d 584 [118 P.2d 483]); the word "mingle" or "mingling" as in a crowd (People v. King, 115 Cal.App.2d Supp. 875 [252 P.2d 78]); provision of the Health and Safety Code limiting the discharge of smoke to that "as dark or darker in shade than that designated as No. 2 on the Ringleman Chart as published by the United States Bureau of Mines" (People v. International Steel Corp., 102 Cal.App.2d Supp. 935 [226 P.2d 587]; "driving drunk" under section 501 Vehicle Code (People v. Haeussler, 41 Cal.2d 252 [260 P.2d 8]; People v. Dingle, 56 Cal.App. 445 [205 P. 705]); "reckless driving" under section 505 Vehicle Code (People v. Smith, 36 Cal.App.2d Supp. 748 [92 P.2d 1039]); "driving automobile while under the influence of narcotics and other drugs" under section 506 Vehicle Code (People v. Berner, 28 Cal.App.2d 392 [82 P.2d 617]); the words "as to indicate wilful and wanton disregard" as used in Vehicle Code 505 prior to its amendment (People v. Steel, 35 Cal.App.2d Supp. 748 [92 P.2d 815]); the same words under the new statute (People v. Young, 20 Cal.2d 832 [129 P.2d 353]); "speed greater than is reasonable or prudent," under Vehicle Code, section 510 (Ex Parte Daniels, 183 Cal. 636 [192 P. 442, 21 A.L.R. 1172]); stating also the general principle involved (People v. Banat, 39 Cal.App.2d Supp. 765 [100 P.2d 374]), with citations (People v. Smith, 36 Cal.App.2d Supp. 748 [92 P.2d 1039]), citing many cases; the words "trade dispute" and "labor disturbance" (People v. Smith, 133 Cal.App.2d Supp. 777 [284 P.2d 203]); "driving at a speed greater than is reasonable and proper," or "at such rate of speed such as to endanger the life or limb of any person, or the safety of any property" (Ex Parte Daniels, 183 Cal. 636 [192 P. 442, 21 A.L.R. 1172]); "unreasonable waste of natural gas" (People v. Associated Oil Co., 211 Cal. 93 [294 P. 717]); "due caution and circumspection" as used in Penal [168 Cal.App.2d Supp. 801] Code, section 192, relating to manslaughter (People v. Crossan, 87 Cal.App. 5 [261 P. 531].) We believe that research would discover many more but further citations would, in our opinion, be superfluous.
 The difficulties suggested by counsel for defendant are, in our opinion, more imaginary than real. The statute sufficiently advises both the defendant and the court and the counsel of the nature of the charge; it would appear that the condition should exist at the time of the arrest to avoid the defense of reformation; the number of occasions of drunkenness is in the nature of degree which may be reasonably defined by the court and on which an individual juror could exercise a proper and sound judgment. (Lord Hardwicke's rule, discussed in 1 Wigmore, Evidence, 3d ed., 1939, 203, p. 691 et seq.; State v. Flynn, 16 R. I. 10 [11 A. 170, 171]; State v. Kelly, 12 R. I. 535; Tatum v. State, 32 Ala.App. 128 [22 So.2d 350]; see citations in Pollon v. State, 218 Wis. 466 [261 N.W. 224].) The offense most likely applies to public places but there are some cases holding that a person may be a "common drunk" in his own home; since the accusation relates to a condition rather than a specific act, there would not seem to be any reasonable objection to proving as many acts as are necessary to cause the condition charged; he should be able to properly prepare his defense by preparing to defend against all accusations of intoxication concerning which he should have personal knowledge; problems of evidence and instructions exist in every case, and do not seem particularly difficult since the jury need only decide whether or not at the time of the defendant's arrest he was an habitual or frequent user of intoxiating liquor to excess. The dictionary should furnish a reasonable guide for the instructions.
 Counsel for defendant stated that he had no case upholding the conviction of a man as a "common drunkard" under a vagrancy statute. But we will refer to (Pollon v. State, 218 Wis. 466 [261 N.W. 224]. The syllabus states: "Defendant could be convicted of vagrancy as a "common drunkard," though he was intoxicated only in his own home, and not in a public place." It briefly traces the use of the words "drunk," "drunkard" and "common drunkard" from the year 1606 to date of the decision (1935). It distinguishes the case (State ex rel. Larkin v. Ryan, 70 Wis. 676 [36 N.W. 823]), upon which the lower court largely based its decision and shows that it had no application to the question before them and now before us. We think the trial court misconstrued Larkin [168 Cal.App.2d Supp. 802] v. Ryan. That case considered the words "common drunkard" but did not hold them insufficient. The ground for reversal, as stated on page 828, was that the statute provided for arrest, conviction, and punishment without a trial. Insofar as it might be construed to hold the words "common drunkard" to be insufficient, it was overruled in the Pollon case.
 The procedure followed in California in upholding the sufficiency of the many words and phrases in statutes of common everyday use as heretofore cited, furnishes us with a proper guide in interpreting the statute here in question. Where the words and phrases are susceptible to a reasonable interpretation to comply with the requirements stated, they have not declared them insufficient because of some element of uncertainty as to degree or definition, but have approved them and have resolved the uncertainties by judicial interpretation, although it has not always been easy. Many of these judicial interpretations are found in the Criminal Instruction book known as CALJIC which is widely used. In so doing they have added flesh and given life to many of the naked skeletons found in the statutes and enabled them to fulfill the beneficial purposes for which they were enacted.
 It is therefore our conclusion, that the statute in question here is not void for uncertainty or ambiguity, and that the trial court committed error in dismissing the complaint and charge. It is therefore ordered that the dismissal be reversed and set aside and the cause remanded to the trial court with instructions to vacate its order dismissing the case, and restore the same to the calendar for further appropriate proceedings.
 We regret the length of this opinion. In spite of diligent effort, we have been unable to shorten it, and still give the difficult problem proper consideration.
 Bush, P. J., concurred.