[Civ. No. 16968.   First Dist., Div. One.   Oct. 8, 1956.]

C. DOYLE WRIGHT et al., Appellants, v. RUSSELL S. MUNRO, as Director of the Department of Alcoholic Beverage Control, Respondent.

Mervyn Schneider and Anthony E. O'Brien for Appellants.

Edmund G. Brown, Attorney General, and Charles A. Barrett, Deputy Attorney General, for Respondent.

PETERS, P. J.—The Department of Alcoholic Beverage Control revoked the general on-sale liquor license of petitioner. The appeal board affirmed. Thereupon, the petitioner sought a writ of mandate to review the propriety of the ruling. From a judgment denying the petition for a writ of mandate petitioner appeals.

On March 4, 1954, the State Board of Equalization, the predecessor of the Department of Alcoholic Beverage Control, charged the appellants with having violated section 25657, subdivision (b) of the Business and Professions Code,[1] and thus created a cause for suspension or revocation of their liquor

---

[1]Section 25657, subdivision (b), provides that it is unlawful "In any place of business where alcoholic beverages are sold to be consumed upon the premises, to employ or knowingly permit anyone to loiter in or about said premises for the purpose of begging or soliciting any patron or customer of, or visitor in, such premises to purchase any alcoholic beverages for the one begging or soliciting."

license under section 24200, subdivision (b) of that code.[2]

The accusation, after referring to the two code sections, was couched in the following terms: "On or about March 3, 1954, the above-named licensees, who did then and there hold an on sale general license for the above-described premises and who were then and there engaged in the business of selling alcoholic beverages for consumption on the premises where sold, did employ, or did knowingly permit Janet Hudson to loiter in and about said premises for the purpose of begging or soliciting patrons or customers of said premises to purchase alcoholic beverages for her consumption or use."

At a hearing on June 9, 1954, appellants offered to plead guilty to the charge and to retire from the liquor business if their license was suspended and not revoked.[3] Subject to that offer, appellants stipulated to the truth of the matters alleged in the accusation. The hearing officer found the charges to be true and recommended an indefinite suspension of the license. The state board adopted the proposed decision of the hearing officer, but, without further evidence, ordered the license revoked instead of suspended. Thereafter, on petition for a writ of mandate, the superior court set aside the revocation order and directed the trial court to grant appellants a full hearing. Thereafter, on December 6, 1954, a full hearing was held. This time the hearing officer recommended that the license be revoked. The Department of Alcoholic Beverage Control adopted the recommendation of the hearing officer, and revoked the license. The appeal board affirmed this ruling. Thereupon, this mandamus proceeding was instituted. The trial court found in favor of the board and denied the petition. The licensees appeal.

At the hearing but two witnesses were called, both agents of the board. Other than cross-examining one of these agents, appellants submitted no evidence.

---

[2] Section 24200 provides: "The following are the grounds which constitute a basis for the suspension or the revocation of licenses: . . .

"(b) Except as limited by Chapters 11 and 12 of this division, the violation or the causing or the permitting of a violation by a licensee of this division, any rules of the board adopted pursuant to Part 14 of Division 2 of the Revenue and Taxation Code or any rules of the department adopted pursuant to the provisions of this division, or any other penal provisions of law of this State prohibiting or regulating the sale, exposing for sale, use, possession, giving away, adulteration, dilution, misbranding, or mislabeling of alcoholic beverages or intoxicating liquors."

[3] It was then the policy of the board to permit a licensee whose license was suspended to sell his business and license. No such privilege was accorded a licensee whose license was revoked.

The principal witness was agent Templeman. He testified that on March 3, 1954, he entered the licensed premises at about 10:25 p.m. He sat at the bar and ordered a highball, for which he paid 50 cents. A few minutes later a girl, later identified as Janet Hudson, sat down beside him and asked: "Do you want a drinking companion?" Templeman, who did not then know the young lady, replied: "Sit down." Janet then motioned to the bartender and told him: "Give me a drink," without stating what she wanted. The bartender filled an old-fashion glass with chipped ice and poured over it a drink from a vermouth bottle. Templeman put some money on the bar and the bartender took from it $1.00 for the girl's drink. When Janet had consumed her drink the bartender asked Templeman if he wanted to buy the lady another drink. Templeman said that he did, and the bartender prepared a drink similar to the first one, and again charged Templeman $1.00.

Templeman then left the premises at about 10:45 p.m., conferred with two other agents, made arrangements that they would enter the premises later and assist him with the arrest, and then reentered the licensed premises at about 11:15 p.m., again sitting at the bar. Janet immediately sat down beside him. The bartender asked Templeman if he wanted to buy the lady a drink, and, upon receiving an affirmative reply, poured her a drink from a vermouth bottle, charging Templeman $1.00 for that drink and 50 cents for his highball. Between 11:15 and 11:45 p.m. this routine was followed at least four times. At 11:45 p.m. the two other agents entered the premises and assisted Templeman in the arrest of the girl and the bartender.

Appellants challenge the sufficiency of the evidence, contending that there is no evidence that they permitted Janet Hudson to "loiter" on the premises, or that Janet Hudson "solicited" or "begged" any patron to buy drinks for her, or that Janet Hudson consumed any "alcoholic" beverage on the premises.

The evidence is weak, but it is legally sufficient.

■ The circumstances recounted by Templeman support the inference that the bartender knew that Janet Hudson was loitering on the premises and soliciting drinks from patrons. The bartender's knowledge is, of course, chargeable to the licensees. (*Cornell* v. *Reilly*, 127 Cal.App.2d 178 [273 P.2d 572].) Janet merely told the bartender "Give me a drink." He apparently recognized her, knew what she wanted, and

served it to her. The subsequent actions of the bartender in returning to the agent and asking him if he wanted to buy the girl another drink is also susceptible of the reasonable inference that the bartender knew that the girl was loitering on the premises for the prohibited purpose. This is corroborated by the actions of the bartender and the girl when the agent returned to the premises. ■ The term "loiter" has a well recognized meaning, and that is "to linger idly by the way, to idle," "to loaf" or to "idle." (*Phillips* v. *Municipal Court*, 24 Cal.App.2d 453, 455 [75 P.2d 548].) The evidence is susceptible of the reasonable interpretation that Janet Hudson was "loitering" on the premises and that this was known to the bartender.

That Janet Hudson "solicited" or "begged" a patron to buy her a drink is obvious. The question "Do you want a drinking companion?", under the circumstances, was equivalent to, "Will you buy me a drink?" Knowledge on the part of the bartender is reasonably inferable.

■ Under the statute it is also required that the drink served be an "alcoholic" beverage. There is no direct evidence that the drinks served Janet Hudson were alcoholic beverages. Templeman testified that the girl asked the bartender for a "drink" and that he poured her one from a vermouth bottle. Vermouth is a wine (Bus. & Prof. Code, § 23007), which, of course, is an alcoholic beverage (Bus. & Prof. Code, § 23004). It is a reasonable inference that the liquid poured from a bottle labeled "vermouth" was in fact vermouth. In fact, it would have been an illegal act if the vermouth bottle were mislabeled. (Health & Saf. Code, §§ 26490 and 26510.) The inference is bolstered by the fact that the bartender charged $1.00 for each drink served from the vermouth bottle, and by the fact that the licensees failed to offer any evidence on the issue, although such evidence was within their power if the liquid was in fact nonalcoholic.

The evidence is, therefore, sufficient to support the finding that Janet Hudson was loitering on the premises for the purpose of soliciting drinks; that she in fact solicited the purchase of such drinks; that these facts were known to the bartender, and that the drinks served her were alcoholic in nature. Thus, all the elements of the offense were proved.

■ In so holding, the court is well aware of the fact that revocation of a liquor license is a severe and serious penalty, and that to impose such a penalty the evidence should be clear and convincing. In the instant case, the evidence as

to the nature of the liquid consumed, is weak. It was in the power of the arresting agents, in a nonemergency case, to secure and produce stronger evidence. Sound police practice suggests that they should have done so. The tendency of some law enforcement officers to be satisfied with the bare minimum of evidence where better evidence is available, is not good police practice. But, whatever we may think of the police methods in the present case and the failure to produce stronger evidence, the evidence produced, although weak, supports the findings and judgment, and that is all that is required.

■ The next contention of appellants is that the accusation is ambiguous and unintelligible. It is urged that the words "employ" and "permit to loiter" in the statute set forth two separate charges in the alternative so that appellants could not properly prepare their defense. Section 11503 of the Government Code requires that the charges be set forth in ordinary and concise language so that the acts with which the licensee is charged will be sufficiently clear so that the person charged will be able to prepare his defense. In these administrative proceedings the courts are more interested with fair notice to the accused than they are to adherence to the technical rules of pleading. (*Marlo* v. *State Board of Medical Examiners,* 112 Cal.App.2d 276 [246 P.2d 69]; *Mast* v. *State Board of Optometry,* 139 Cal.App.2d 78 [293 P.2d 148]; *Taylor* v. *Bureau of Private Investigators,* 128 Cal.App.2d 219 [275 P.2d 579].) Under the rules laid down in these cases the pleading was sufficient.

■ Appellants also challenge the statute under which they are charged as being unconstitutional, particularly claiming that a statute which prohibits "permitting anyone" to "loiter" about the licensed premises to "solicit" drinks is too indefinite for enforcement, and too broad in its classification. The contention is that the words "loiter" and "soliciting" are too broad or too vague or uncertain. The word "loiter," as already pointed out, is clear and certain. So is the word "soliciting." (See *People* v. *Phillips,* 70 Cal. App.2d 449 [160 P.2d 872]; *People* v. *Levy,* 8 Cal.App.2d Supp. 763 [50 P.2d 509].)

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 5, 1956.