[Civ. No. 18047. First Dist., Div. One. June 19, 1958.]

MARY G. GARCIA et al., Appellants, v. RUSSELL S. MUNRO, as Director of The Department of Alcoholic Beverage Control, Respondent.

Theodore H. Cominos and Lawrence Shostak for Appellants.

Edmund G. Brown, Attorney General, and Charles A. Barrett, Deputy Attorney General, for Respondent.

PETERS, P. J.—Mary G. Garcia and Rudolfo Arzate, operators of Betsy's Coffee Shop in Salinas, own an on-sale beer

and wine license. They were charged in four counts with violating various sections of the Alcoholic Beverage Control Act. The hearing officer found the licensees guilty of all four charged offenses, and recommended that on counts 1 and 2 the license be suspended for 15 days, and on violations charged in counts 3 and 4 the license should be revoked. The Department of Alcoholic Beverage Control adopted this proposed decision and the Alcoholic Beverage Control Appeals Board, in due course, affirmed. The superior court annulled count 4 and affirmed as to counts 1, 2 and 3. The licensees appeal. The briefs challenge only the validity of the penalty imposed under count 3.

As to count 1, the hearing officer found that on May 16, 17 and 18, 1956, the licensees permitted a female employee, Juana Villa, to accept alcoholic beverages from customers. As to count 2, it was found that on May 16 and 17, 1956, the licensees permitted Juana Villa to dispense wine from behind a permanently affixed fixture in violation of the act. On each of these two violations the license was suspended for 15 days. The validity of these rulings is not challenged, and the evidence to support them is substantial. As to count 3, it was found that on May 16th and May 18, 1956, the licensees "did employ one Juana C. Villa to loiter in and upon said premises for the purpose of soliciting patrons and visitors in said premises to purchase alcoholic beverages, to-wit: beer, for her consumption and use." For this violation the license was revoked. It is this ruling that is challenged on this appeal.

The evidence relied upon to support the challenged ruling was given by Hugh A. Boyle, an agent of the Department of Alcoholic Beverage Control. He visited the premises on May 16, 17 and 18, 1956.

He testified that on May 16, 1956, Juana Villa, called by the patrons "Jennie," served him several wine drinks in violation of the law. This clearly supports the findings on count 2 which is not here involved. Boyle also testified that at this time there were two female bartenders behind the bar, one of whom was Jennie, and that there were about 10 patrons at the bar. He saw Jennie drinking beer with a party of two men and two women, and overheard Jennie ask the men to buy her a beer. One of the licensees, Mr. Arzate, was then on the premises. Later that same evening Boyle returned to the licensed premises, again purchased a wine drink, and saw that Jennie was drinking beer with some patrons. He did not, however, overhear any conversation between these patrons

and Jennie, nor did he observe any other patron purchase a drink for her.

On the evening of May 17, 1956, Boyle again visited the premises. This time Jennie was the sole attendant behind the bar, and again served him a wine drink. He saw two men, without request from Jennie, purchase her a bottle of beer. Neither licensee was on the premises.

On the evening of May 18, 1956, Boyle again visited the premises, and this time Jennie and the female cook were behind the bar. There were about 30 patrons visible, and both licensees were present. Boyle purchased a beer, which was served him by the cook, and then he ordered another beer from Jennie. She asked him to buy her one, which he did, and, a little later, asked him to buy her another, which he did. He saw Jennie drink a little from each bottle. While this was going on Mrs. Garcia, one of the licensees, was seated about 15 feet distant, and Mr. Arzate, the other licensee, was about 30 feet away. Boyle observed nothing that led him to believe that there was any profit-sharing deal between the licensees and Jennie. This evidence clearly shows that Jennie, an employee, solicited beverages from customers, and supports the charge in count 1 for which a 15-day suspension was imposed. This finding is not challenged on this appeal.

There was contrary evidence. Jennie testified that she had worked for the licensees for several weeks before May 16th. Arzate told her not to serve wine, only beer, and, if wine was ordered, Arzate would serve it. She was told not to ask patrons to buy her a drink, and was not paid anything for drinks solicited by her. She never asked anyone to buy her a beer. Her salary was $35 a week.

One of the licensees, Mary Garcia, testified that she was in Mexico on May 16, 17, and 18th, and her fellow licensee corroborated this. Arzate testified that he had no deal with Jennie to pay her for soliciting drinks, and, in fact, told her not to solicit because it was against the law. He told Jennie not to serve wine.

The basic question presented is whether finding number 3 is supported by the evidence. That finding declares that the licensees employed Jennie to loiter on the premises for the purpose of soliciting patrons to purchase her drinks. Such activity is prohibited by section 25657, subdivision (b) of the Business and Professions Code. That section provides that it is unlawful "In any place of business where alcoholic beverages are sold to be consumed upon the premises, to employ

or knowingly permit anyone to loiter in or about said premises for the purpose of begging or soliciting any patron or customer of, or visitor in, such premises to purchase any alcoholic beverages for the one begging or soliciting.

"Every person who violates the provisions of this section is guilty of a misdemeanor."

This section was primarily aimed at preventing licensees from hiring persons to loiter on the licensed premises for the purpose of soliciting drinks. In *Wright* v. *Munro,* 144 Cal. App.2d 843 [301 P.2d 997], this court affirmed an order revoking a license under this section. In so holding it was stated (p. 846):

"The evidence is weak, but it is legally sufficient.

"The circumstances recounted by Templeman [the agent] support the inference that the bartender knew that Janet Hudson was loitering on the premises and soliciting drinks from patrons. The bartender's knowledge is, of course, chargeable to the licensees. (*Cornell* v. *Reilly,* 127 Cal.App.2d 178 [273 P.2d 572]. . . .) Janet merely told the bartender 'Give me a drink.' He apparently recognized her, knew what she wanted, and served it to her. The subsequent actions of the bartender in returning to the agent and asking him if he wanted to buy the girl another drink is also susceptible of the reasonable inference that the bartender knew that the girl was loitering on the premises for the prohibited purpose. This is corroborated by the actions of the bartender and the girl when the agent returned to the premises. The term 'loiter' has a well recognized meaning, and that is 'to linger idly by the way, to idle,' 'to loaf' or 'to idle.' (*Phillips* v. *Municipal Court,* 24 Cal.App.2d 453, 455 [75 P.2d 548]. . . .) The evidence is susceptible of the reasonable interpretation that Janet Hudson was 'loitering' on the premises and that this was known to the bartender.

"That Janet Hudson 'solicited' or 'begged' a patron to buy her a drink is obvious. The question 'Do you want a drinking companion?', under the circumstances, was equivalent to, 'Will you buy me a drink?' Knowledge on the part of the bartender is reasonably inferable."

In that case the evidence that the girl was employed to loiter to solicit drinks while characterized as "weak," was held to be sufficient. In the present case the fact that Jennie was employed by the licensees is admitted. She was employed as a bartender or waitress. The real question is whether she

was employed "to loiter" for the purpose of soliciting drinks from patrons.

It will be noted that section 25657, subdivision (b) of the Business and Professions Code makes it unlawful "to employ or knowingly permit" anyone to loiter for the purpose of soliciting drinks from customers. The finding upon which the revocation is predicated is that the licensees "did employ" Jennie "to loiter in and upon said premises for the purpose of soliciting" patrons to buy her a drink.

The fact that Jennie drank with patrons and perhaps solicited drinks from them to the knowledge of the licensees is shown by the evidence. That is the basis for the charge involved in count 1 for which a 15-day suspension was imposed. But count 3 includes another element, employment for the purpose of loitering. The basic question is, does the evidence show that Jennie was employed to loiter to solicit drinks? Certainly the evidence on that issue is much weaker than the evidence in *Wright* v. *Munro,* 144 Cal.App.2d 843 [301 P.2d 997]. In that case the woman who was loitering did no other work. Here Jennie was employed as a bartender or waitress and performed the duties of that position. Certainly evidence that she talked with patrons, spent some time with them and solicited some patrons to buy her drinks does not support a finding that she was employed to "loiter" on the premises to solicit drinks. If there was evidence that the licensees paid her a commission for drinks solicited, that might be some indication that she was employed "to loiter" to solicit drinks. But the fact that a bartender or waitress solicits a drink from a patron, and talks with him, does not support an inference that such bartender or waitress was employed "to loiter" to solicit drinks. There is no evidence at all that Jennie sat down with the patrons or neglected her duties as a bartender while drinking with patrons. There is no evidence that she lingered idly by or was loafing on the job. In *Wright* v. *Munro, supra,* the verb "loiter" was defined to mean "to linger idly by the way, to idle"; "to loaf"; or "to idle." The term has been defined in many cases. In every definition we have found (see many cases collected in 25 Words and Phrases (perm. ed.) p. 589, et seq.; 1958 pocket part, p. 193) there is included the concepts of to stand idly by, to spend time idly, to loaf, or to walk about aimlessly without purpose. There is no evidence that Jennie did any of these things. For that reason there is no evidence to support the finding that she

was employed to loiter on the premises to solicit drinks from patrons.

The evidence that the licensees knew that Jennie solicited drinks is very weak. Certainly the licensees knew, or should have known, that Jennie was drinking beer with customers, but knowledge of solicitation by her is another matter. Boyle admitted that neither licensee was on the premises during several of his visits to the premises when he heard Jennie solicit drinks from patrons. On May 18, 1956, when Jennie solicited him to buy a drink for her, his testimony was that one licensee was 15 feet away and the other 30 feet away. Whether this supports a finding that they knew she was soliciting drinks may be a debatable question. But on the sufficiency of the evidence to support count 3 there can be no doubt. There was no evidence to support the finding that Jennie was employed to loiter to solicit drinks.

█ Respondent argues that the evidence supports the finding as to count 4, and for that reason the judgment refusing a writ of mandate should be affirmed. Count 4 was annulled by the trial court. The respondent has not appealed from that determination. That count and that charge are not now before us, and therefore the claim that the trial court erroneously annulled that count cannot now be considered. There is nothing in *McCracken* v. *Teets*, 41 Cal.2d 648 [262 P.2d 561], cited by respondent, that purports to challenge the elementary rule that a respondent cannot challenge the validity of a judgment from which he has not appealed.

The judgment denying the writ of mandate, insofar as it relates to count 3, is reversed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied July 18, 1958.