[Crim. No. 6893. In Bank. July 20, 1961.]

In re HOLLAND CREGLER on Habeas Corpus.

Benjamin M. Davis and John H. Sutter for Petitioner.

Stanley Mosk, Attorney General, Arlo E. Smith, Deputy Attorney General, Thomas C. Lynch, District Attorney (San Francisco), and Francis Mayer, Chief Assistant District Attorney, for Respondent.

SCHAUER, J.—In this proceeding begun by a petition for prohibition but by stipulation to be considered as an application for the writ of habeas corpus, petitioner attacks the constitutionality of the provisions of subdivision 4 of section 647 of the Penal Code[1] as that section read before it was repealed[2] and a new section 647 enacted in 1961. (Stats. 1961, ch. 560.)

---

[1] Former Penal Code, section 647: "... 4. Every person known to be a pickpocket, thief, burglar or confidence operator, either by his own confession, or by his having been convicted of any of such offenses, and having no visible or lawful means of support, when found loitering around any steamboat landing, railroad depot, banking institution, broker's office, place of amusement, auction room, store, shop or crowded thoroughfare, car, or omnibus, or any public gathering or assembly; ...
"Is a vagrant, and is punishable by a fine of not exceeding five hundred dollars ($500), or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment."

[2] Because of the saving clause provided by Government Code, section 9608, repeal of the old section does not affect this case. (*Sekt* v. *Justice's Court* (1945), 26 Cal.2d 297, 300-302 [159 P.2d 17, 167 A.L.R. 833]; *People* v. *Mason* (1958), 163 Cal.App.2d 630, 631-632 [1] [329 P.2d 614]; *People* v. *Harmon* (1960), 54 Cal.2d 9, 21 [15] [4 Cal.Rptr. 161, 351 P.2d 329].)

An alternative writ issued, which by stipulation is deemed an order to show cause on petition for habeas corpus. On the record which is before us we have concluded that petitioner's contentions (that the statute is unconstitutionally vague and indefinite in its language and its meaning) are without merit, and that the application should be denied.

On January 31, 1961, while petitioner was standing in the Greyhound Bus Station in San Francisco allegedly waiting for a friend, he was arrested by an officer of the San Francisco Police Department. Thereafter a complaint was filed in the municipal court in San Francisco by the district attorney of the City and County of San Francisco charging petitioner with a violation of subdivision 4 of former section 647 of the Penal Code, in that he "being a known thief by his having been convicted of such offense and having no visible and lawful means of support, did loiter about a place of public gathering and was then and there a vagrant."

On February 15, 1961, petitioner demurred to the complaint on the specified ground that the statute is unconstitutional as being in conflict with article I, sections 11 and 13,[3] of the Constitution of the State of California and the Fourteenth Amendment ("due process" and "equal protection" clauses) to the Constitution of the United States. He also moved to dismiss the complaint upon the same grounds.

The demurrer was overruled and the motion to dismiss denied. Petitioner then entered a plea of not guilty, and the case was set for trial. The present petition followed.

In support of the ground specified petitioner contends that the word "loitering" is so vague and indefinite as to "leave the defendant to the vagaries of individual judges" and, further, that the statute "unduly restricts a person's liberty." These contentions, in any application of the statute relevant to the facts of this case as they now appear, are without merit.

The statute with which we are here concerned (Pen. Code, § 647, subd. 4) by its own terms is limited in application to the classification of "pickpocket, thief, burglar or confidence operator . . . having no visible or lawful means of support," and makes it unlawful for a person in that class to loiter "around any steamboat landing, railroad depot, banking institution, broker's office, place of amusement, auction room, store,

---

[3]Section 11: "All laws of a general nature shall have a uniform operation."

Section 13: Includes the "due process" clause.

shop or crowded thoroughfare, car, or omnibus, or any public gathering or assembly." The pertinent facts of this case on which (in this proceeding and in the present state of the record) the constitutionality of applying the subject statute must be tested are as above indicated; i.e., petitioner, "being a known thief by his having been convicted of such offense and having no visible and lawful means of support" was observed standing in the Greyhound Bus Station in San Francisco and was arrested while so waiting there.

The reasonableness of such a statute appears to be plain. The public has an obvious interest in preventing professional pickpockets and thieves from loitering about places in which they may most conveniently and lucratively ply their trade.

As pointed out in *People* v. *Superior Court* (1937), 10 Cal.2d 288, 298 [4] [73 P.2d 1221], "judicial decisions abound with declarations to the effect that all presumptions and intendments favor the validity of statutes; that mere doubt by the judicial branch of the government as to the validity of a statute will not afford a sufficient reason for a judicial declaration of its invalidity. . . ." (See also *Flores* v. *Los Angeles Turf Club* (1961), 55 Cal.2d 736, 744 [4] [13 Cal.Rptr. 201, 361 P.2d 921]; *Allied Properties* v. *Department of Alcoholic Beverage Control* (1959), 53 Cal.2d 141, 146 [3] [346 P.2d 737]; *State* v. *Industrial Acc. Com.* (1957), 48 Cal.2d 365, 371-372 [1-7] [310 P.2d 7]; *Lundberg* v. *County of Alameda* (1956), 46 Cal.2d 644, 652 [10] [298 P.2d 1]; *In re Herrera* (1943), 23 Cal.2d 206, 212 [2] [143 P.2d 345].) Thus in the Flores case the ejection from a race track of one who had previously been convicted of violating section 337a of the Penal Code (bookmaking) was upheld under legislation and regulations which required the exclusion or ejection from such tracks of "known bookmakers, known touts, persons who have been convicted of violations of . . . [this chapter, including section 19561.5 of the Business and Professions Code] or of the laws prohibiting bookmaking or other illegal forms of wagering on horse races, and other persons or classes of persons whose presence in such enclosure would, in the opinion of the [Horse Racing] board, be inimical to the interests of the State or of legitimate horse racing, or both." (P. 746.)

Further, the word "loiter" as used in the subject statute (and in many other police power regulations)[4] in our

---

[4]See e.g.: Subdivision 5 of Penal Code, section 647 (before its repeal and enactment of a new section 647 in 1961; Stats. 1961, ch. 560), which applied to "Every lewd or dissolute person, or every person who loiters

view has a sinister or wrongful as well as a reasonable definite implication. As proscribed by the statute the word "loiter" obviously connotes lingering in the designated places for the purpose of committing a crime as opportunity may be discovered. Section 4 of the Penal Code declares that the provisions of that code "are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice." (See *People* v. *Carskaddon* (1957), 49 Cal.2d 423, 425 [1] [318 P.2d 4].) Manifestly one who goes to a bus station or railroad depot and waits for the purpose of buying a ticket, boarding the conveyance, meeting a relative or friend actually expected to arrive, or with any other legitimate objective, is not loitering within the sense of the statute. Loitering as forbidden includes waiting, but mere waiting for any lawful purpose does not constitute such loitering. (*Cf. Phillips* v. *Municipal Court* (1938), 24 Cal.App.2d 453, 454-456 [1-3] [75 P.2d 548].) ▮ It is elementary that, if possible, statutes will be so construed as to avoid absurd applications and to uphold their validity. (See *Warner* v. *Kenny* (1946), 27 Cal.2d 627, 629 [3] [165 P.2d 889].) ▮ A statute "will not be given an interpretation in conflict with its clear purpose, and . . . general words used therein will be given a restricted meaning when reason and justice require it, rather than a literal meaning which would lead to an unjust and absurd consequence." (*People* v. *Kelley* (1937), 27 Cal. App.2d Supp. 771, 774 [3] [70 P.2d 276]; see also *People* v. *King* (1952), 115 Cal.App.2d Supp. 875, 877-880 [252 P.2d 78].)

---

in or about public toilets in public parks''; and also subdivision 12 which covered "loitering . . . upon the private property of another, in the night-time. . . .''

Subdivisions (d), (e) and (g) of section 647 of the Penal Code as newly enacted in 1961 (Stats. 1961, ch. 560), each of which subdivisions makes persons who loiter in certain locations and under certain circumstances "guilty of disorderly conduct, a misdemeanor.''

Section 25657, subdivision (b), Business and Professions Code, making it unlawful "In any place of business where alcoholic beverages are sold to be consumed upon the premises, to employ or knowingly permit anyone to loiter . . . for the purpose of begging or soliciting any patron . . . ,'' which was upheld in *Wright* v. *Munro* (1956), 144 Cal. App.2d 843, 847 [3] [301 P.2d 997], and in *Garcia* v. *Munro* (1958), 161 Cal.App.2d 425, 429 [1] [326 P.2d 894].

For a scholarly compilation of numerous California cases and the statutory words and phrases which they held sufficiently certain to meet constitutional requirements, see *People* v. *Daniel* (1959), 168 Cal.App.2d Supp. 788, 799-800 [337 P.2d 247] (holding disapproved in *In re Newbern* (1960), 53 Cal.2d 786, 797 [16b] [3 Cal.Rptr. 364, 350 P.2d 116] solely with respect to former Pen. Code, § 647, subd. 11 [the term "common drunkard"]).

In the light of these rules the cases relied upon by petitioner (such as *In re Bell* (1942), 19 Cal.2d 488, 496-497 [4] [122 P.2d 22]; *Matter of Williams* (1910), 158 Cal. 550 [111 P. 1035]; *In re McCue* (1908), 7 Cal.App. 765 [96 P. 110]; *In re Harder* (1935), 9 Cal.App.2d 153 [49 P.2d 304]) lack persuasive force and no useful purpose would be served by discussing them in detail. The same may be said of *Territory of Hawaii* v. *Anduha* (1931), 48 F.2d 171, 173 [2].

It has also been suggested that the words "pickpocket" and "confidence operator," which appear in the subject statute, are unconstitutionally vague, and, further, that the statute is unreasonable in its possible application towards persons who might in their youth have suffered conviction of one of the listed offenses but who for many years thereafter have led exemplary lives. The rule is well established, however, that one will not be heard to attack a statute on grounds that are not shown to be applicable to himself and that a court will not consider every conceivable situation which might arise under the language of the statute and will not consider the question of constitutionality with reference to hypothetical situations. (*United States* v. *Raines* (1960), 362 U. S. 17, 21-22 [80 S.Ct. 519, 523 [3, 4], 4 L.Ed.2d 524]; *People* v. *Perry* (1931), 212 Cal. 186, 193 [3] [298 P. 19, 76 A.L.R. 1331]; *People* v. *Naumcheff* (1952), 114 Cal.App.2d 278, 280 [1, 2] [250 P.2d 8].) Petitioner has not shown that the statute is being invoked against him in the aspects or under the circumstances which he suggests, and hence may not be heard to complain.

The alternative writ of prohibition, herein by stipulation deemed an order to show cause, and such order to show cause, are discharged; the petition for prohibition, deemed to be an application for habeas corpus, is denied; and the petitioner is remanded for trial on the charge as laid.

Gibson, C. J., Traynor, J., White, J., and Dooling, J., concurred.

McCOMB, J.—I dissent. In my opinion, this is the sole question necessary to be decided: *Does section 647, subdivision 4, of the Penal Code,* as applied to the facts of this case, make loitering a crime?*

---

*Section 647 of the Penal Code reads, in part, as follows: ". . . 4. Every person known to be a pickpocket, thief, burglar or confidence operator, either by his own confession, or by his having been convicted of any

*No.* The word "loitering" has no sinister meaning and implies no wrongdoing or misconduct on the part of one engaged in such an act. (*Territory of Hawaii* v. *Anduha,* 48 F.2d 171, 173 [2]; *In re Bell,* 19 Cal.2d 488, 497 [122 P.2d 22]; *cf. Matter of Williams,* 158 Cal. 550 [111 P. 1035]; *In re McCue,* 7 Cal.App. 765, 766 [96 P. 110].)

In *Territory of Hawaii* v. *Anduha, supra,* the Circuit Court of Appeals for the Ninth Circuit, in quoting with approval from the opinion of the Supreme Court of the Territory of Hawaii affirming a judgment declaring a statute using the word "loiter" as unconstitutional and void, said at page 172: "All loitering, loafing or idling on the streets and highways of a city, even though habitual, is not necessarily detrimental to the public welfare nor is it under all circumstances an interference with travel upon them. It may be and often is entirely innocuous. The statute draws no distinction between conduct that is calculated to harm and that which is essentially innocent.

"Visitors, lured by the fame of our climate and of our natural scenery and the hospitality of our people, come here for recreation and pleasure. Many of them, having no other occupation, habitually but harmlessly idle or loiter upon our streets and highways. In their pursuit of happiness, which is a guaranteed right, they loiter before shop windows, pause to enjoy the changing colors of the ocean and to talk with friends. It would be shocking to say that so long as they are innocent of any wrong and conduct themselves with due regard to the rights of others and the good order of the community the legislature has the constitutional authority to declare them misdemeanants and subject them to arrest and imprisonment. Also, there are persons who, taking advantage of the leisure they have on the Sabbath, habitually go for long hikes along the public highways. When weariness overtakes them they stop for rest. Attracted by the beauties of the landscape they loiter and idle for as long as they choose. The free use of the highway by others is not impeded and the public peace is not disturbed."

---

of such offenses, and having no visible or lawful means of support, when found loitering around any steamboat landing, railroad depot, banking institution, broker's office, place of amusement, auction room, store, shop or crowded thoroughfare, car, or omnibus, or any public gathering or assembly; . . . .

"Is a vagrant, and is punishable by a fine of not exceeding five hundred dollars ($500), or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment."

It is settled that a statute creating a crime must define it so clearly and definitely that all may know what act or omission constitutes a violation of the law. The statute must so define the offense that a person of ordinary understanding may know therefrom when he is violating its provisions. (*In re Newbern,* 53 Cal.2d 786, 792 [9] [3 Cal.Rptr. 364, 350 P.2d 116]; *In re Harder,* 9 Cal.App.2d 153, 155 [2] [49 P.2d 304].)

Applying the foregoing rules to the facts of the present case, it is clear that since the word "loitering" has no sinister meaning and implies no wrongdoing or misconduct, petitioner did not commit any crime under the provisions of section 647, subdivision 4, of the Penal Code.

Any statement to the contrary in *Phillips* v. *Municipal Court,* 24 Cal.App.2d 453 [75 P.2d 548], should be disapproved.

I would order petitioner discharged from custody.

PETERS, J.—I dissent for the reasons stated in the dissenting opinion of Mr. Justice McComb, and for certain additional reasons.

The statute here involved (Pen. Code, § 647, subd. 4), purports to punish a person simply because he has been convicted, some indefinite time in the past, of certain enumerated crimes if he is found "loitering" in certain public places. The statute does not require that any type of suspicious or sinister conduct be connected with the loitering. Thus the statute purports to punish a person as a criminal simply because of his status, an early common-law concept that has long been repudiated in all enlightened jurisdictions.

The majority, in order to avoid this obvious defect in the statute, define "loitering" as "lingering in the designated places for the purpose of committing a crime as opportunity may be discovered." No case is cited in support of this tortured interpretation. If the statute contained this limitation it might be valid. But the statute does not so provide. The word "loitering" has no such sinister meaning, as the cases cited by Mr. Justice McComb in his dissent, demonstrate. The verb "loiter" is defined in Webster's New International Dictionary (2d ed.) as "To be slow in moving; delay; linger; saunter; lag behind." Those are its obvious meanings. No suspicious, sinister, or criminal conduct is implied in such definitions. The majority, in an attempt to save the statute, have simply rewritten it by inserting the element that the loitering must be so connected with other conduct that it indi-

cates that the loiterer is lingering in the prohibited area for the purpose of committing a crime. No such element is to be found in the statute, nor is it to be found in the charge made against petitioner. Certainly, a person who has had a prior conviction should not be punished simply because he is slow in moving, or delays, or lingers, or saunters, or lags behind in public places. Certainly it is not a reasonable inference that such a person is contemplating committing a crime. The majority opinion necessarily is predicated upon the concept that ''once a criminal always a criminal.'' If a person has been once convicted of one of the enumerated offenses and is observed lingering in a public place he is, according to the majority, necessarily contemplating the commission of a crime. Even if the mere contemplation of a crime could itself be a crime, which it cannot, such an inference is unsound and unrealistic. It disregards the fact that the ex-criminal has already paid his full debt to society for his past offense, and presumably has learned his lesson. It brushes aside the reasonable probability of rehabilitation. It brands an ex-criminal as a present criminal for the balance of his life if he ever sits down or stands, or even walks slowly, in a public place.

It is certainly true, as stated by the majority, that all presumptions and intendments favor the validity of statutes, and that the courts should so interpret statutes so as to make them, if possible, reasonable and workable. But, under the guise of interpretation, the court has no power to rewrite the law by inserting therein a provision not found in the enactment, or to fill a gap in a statute by adding a provision that the Legislature, by oversight or design, omitted. (Code Civ. Proc., § 1858; see many cases collected and commented upon in 45 Cal.Jur.2d, p. 611, § 97 et seq.) That is precisely what the majority have done in the present case.

For these reasons the statute in my opinion is invalid, and the petitioner should be discharged from custody.

McComb, J., concurred.