BOYER, Chief Judge.
Respondent, Board of Business Regulation, issued an order affirming an order of the Division of Beverage which revoked petitioner’s alcoholic beverage license. In *822 its petition for writ of certiorari, petitioner challenges the order of license revocation, claiming that the evidence presented at the hearing did not establish a statutory violation as alleged in the notice to show cause and that the director of the Division of Beverage, Edward Ashley, was without authority to sign the order revoking petitioner’s license.
The notice to show cause charged petitioner with violation of F.S. 562.131(2) which provides:
“It is unlawful for any licensee, his employee, agerrt or servant to knowingly permit any person to loiter in or about the licensed premises for the purpose of begging or soliciting any patron or customer of or visitor in such premises to purchase any beverage, alcoholic or otherwise.”
Analysis of the statute indicates that in order to show a violation thereof, the State must prove four elements. The state must prove that (1) the licensee (or his employee, agent, or servant) did knowingly permit any person to (2) loiter in or about the licensed premises (3) for the purpose of (4) begging or soliciting. In the absence of proof of any of the foregoing elements, respondent’s case against petitioner must fall.
In order to determine whether the State met its burden, the evidence produced at the revocation hearing must be summarized. On the evening of January 23, 1974, State Beverage Agents Miles L. Johnson and William Valentine visited petitioner’s establishment. After the two agents were seated, cocktail waitress Beverly Powell approached them, informed them of the three drink minimum, and took their order. Shortly thereafter, another white female joined the agents at the table, engaged in general conversation, and departed. Some five minutes later, another female (Linda Payne) joined the men at their table with their approval. Miss Payne conversed briefly with the men, then turned to Agent Valentine and asked him if he minded if she had some wine. Agent Valentine offered no objections whereupon Miss Payne ordered a bottle of red wine. Miss Payne asked the agents if they would like to have “Miss Body Beautiful” (a/k/a Miss Paseley Pop a/k/a Kathy Lawler) sit at their table. When the agents expressed approval, Miss Payne told waitress Powell to bring Miss Body Beautiful to the table. Upon arriving, she also engaged the agents in general conversation and, after a short time, asked Agent Johnson whether he minded if she had some wine. The cocktail waitress brought two small bottles of wine to the table for the two women. When these were consumed, the two women asked the agents if there were any objections to their having some more wine. Hearing none, the women ordered two more bottles of wine, with Miss Body Beautiful specifying large bottles. President of petitioner indicated that he paid his employees bonuses at the end of every week based on the amount of wine purchased when they sat with customers. He also testified that both Miss Payne and Miss Body Beautiful were employed by him as exotic dancers, but that on the night in question they were not performing. At the end of the evening, cocktail waitress Powell presented the agents with a bill which totaled $129.40, each agent being charged $10.40 for the three drink minimum, $19.50 for each small bottle of wine, and $35.15 for each large bottle of wine. The agents paid the bill, and left the premises.
Our detailed examination of the evidence presented at the hearing as summarized above indicates a complete dearth of testimony on the element of “loitering”. It is undisputed that the two women who were allegedly soliciting Agents Johnson and Valentine on the evening in question were employees of petitioner, even though they were not actively engaged that night in their normal capacity as exotic dancers. Petitioner significantly asks, “Can a bona fide employee loiter on his place of busi *823 ness ?” Our answer, under the circumstances of this case, is in the negative. Black’s Law Dictionary defines “loiter” as “to he dilatory; to be slow in movement; to stand around or move slowly about; to stand idly around; to spend time idly; to saunter; to delay; to idle; to linger; to lag behind.” The actions of the females involved in this case do not bring them within any legally accepted definition of “loiter”.
Our opinion should not be construed as an expression of judicial approval of the actions involved herein. We do not condone B-girls, or liquor being sold at exorbitant prices. However, the legislature, not the courts, must determine what is prohibited and clearly express such prohibitions in proper statutory language. Here, the conduct for which petitioner was punished is not proscribed by statute. Until the legislature does pass an appropriate statute, the type of conduct which is involved in the instant case cannot serve as a basis for the revocation of an alcoholic beverage license. (See Garcia v. Munro, 1958, 161 Cal.App. 2d 425, 326 P.2d 894)
Petitioner also claims that Director Edward B. Ashley of the Division of Beverage did not have the statutory authority to sign the order revoking petitioner’s license. Pursuant to F.S. 20.16(4), the executive director of the Board of Business Regulation appointed Mr. Ashley on August 9, 1974. On November 12, 1974, one month after Director Ashley signed the order revoking petitioner’s alcoholic beverage license, the full Board of Business Regulation voted to confirm Mr. Ashley’s appointment effective retroactively to August 9, 1974. Petitioner argues that inasmuch as Director Ashley had not been confirmed by the Board of Business Regulation prior to the time that he signed the order revoking petitioner’s license, he acted without statutory authority, and the order involved herein should be declared null and void under Treasure, Inc. v. State Beverage Department, Sup.Ct.Fla.1970, 238 So.2d 580. We have concluded that the Treasure, Inc. decision is not dispositive of the issue before us. The Supreme Court in its Treasure, Inc. decision discussed the power of the beverage director under F.S. 561.29 (1967) and held that before a substitute director could be appointed, he must have been formally commissioned and taken an oath of office under the appropriate sections of the 1885 Florida Constitution. The instant case is governed by drastically different constitutional and statutory provisions. F.S. 561.29 was amended in 1969 so that the Division of Beverage rather than the beverage director now has the power to suspend or revoke licenses. We are not prepared to say that this change in language . is meaningless. Moreover, under Article 4, Section VI of the Florida Constitution (1968. Rev.), all functions of the executive branch are to be allotted among not more than 25 departments, the administration of which are to be placed by law under the direct supervision of the Governor and other enumerated State officers and entities, including boards appointed by and serving at the pleasure of the Governor. This Constitutional provision reflects an obvious attempt to consolidate executive power and to reduce the number of State agencies exercising delegated executive functions. Thus, no longer is the beverage director directly appointed by the Governor, nor is he directly authorized to exercise the sovereign power of the State. Under the current Constitutional and statutory scheme, it is the Board of Business Regulation which administers the Department of Business Regulation and the subordinate divisions, including the Division of Beverage. Finally, the Treasure, Inc. decision dealt with the violation of specific Constitutional provisions (the taking of the oath of office and the issuing of formal commission) and held that in the absence of these Constitutional requirements, the substitute director lacked authority to exercise the State’s power. In the instant case, petitioner does not allege any Constitutional violation but merely asserts that the *824 statutory method by which a beverage director assumes office was not followed.
Thus, the question becomes whether the statutory requirement that the director of the Division of Beverage be approved by the Board of Business Regulation is of such legal significance that any-action taken by the beverage director before fulfillment of such requirement is a nullity. Given the nature of executive power as reorganized under Article 4, Section VI of the Constitution (1968 Rev.) and the fact that the director of the Division of Beverage serves at the pleasure of the Board of Business Regulation as well as being appointed by that body, it appears logical that the Board of Business Regulation may ratify the actions of a beverage director who has been duly appointed by the Executive Director of the Board of Business Regulation but who has not been confirmed by the full board. The board attempted to accomplish this very result when, at the time it confirmed Mr. Ashley as the director of the Division of Beverage, it voted to make the confirmation retroactive from August 9, 1974. This action by the Board of Business Regulation in addition to the order appealed herein which affirmed Director Ashley’s order revoking petitioner’s alcoholic beverage license manifests an obvious intent on the part of the Board of Business Regulation to ratify Director Ashley’s actions. See 63 Am.Jur.2d, “Public Officers and Employees”, § 272. In light of the actions taken by the Board, we conclude that the order revoking petitioner’s alcoholic beverage license and signed by Mr. Ashley as Director of the Division of Beverage should be considered binding and valid.
For reasons expressed in the first part of this opinion, the petition for writ of certiorari is granted, and the order of the Board of Business Regulation affirming the order of the Division of Beverage which revoked petitioner’s alcoholic beverage license is quashed.
LEE, THOMAS E., Associate Judge, concurs.
HATCHETT, JOSEPH W., Associate Judge, concurring with opinion.