[No. B139424. Second Dist., Div. Seven. Oct. 30, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY L. THOMASON, Defendant and Appellant.

**COUNSEL**

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Steven D. Matthews and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, P. J.**—The issue of defendant's guilt was submitted to the trial court on the testimony taken at the preliminary hearing and a videotape received in evidence. It found defendant guilty of three felony counts of cruelty to animals (mice, rats, newborn mice) in violation of Penal Code section 597, subdivision (a).[1] He appeals from the judgment. We affirm.

### STATEMENT OF FACTS

On information from a Ventura County District Attorney investigator who had learned, through a chat room and subsequent conversation with defendant, that he had produced a "crush video"[2] depicting rats, mice and baby mice ("pinkies") being crushed and killed by a female under heel of her

---

[1]Codefendant Diane Aileen Chaffin, charged in the same information, pleaded no contest to each of the three counts.

[2]"Crush videos" are fetish videos in which small animals are taunted, tortured, then crushed to death under the feet of provocatively dressed women.

shoe, Officer William Le Baron and other officers conducted a search of defendant's apartment for any evidence of his production and distribution of videos. Officer Le Baron found 30 or 40 videos in defendant's closet, then asked defendant for the crush video he had filmed with codefendant Diane Aileen Chaffin. Defendant told the officer the videotape was with the others and labeled "Diane." Officer Le Baron found two "Diane" videotapes which, defendant stated, had been filmed at the home of Chaffin's parents. Other items seized were defendant's computer containing chat room conversations relating to crush videos, clips taken from crush videos and still images.

The videotape in evidence is 60 minutes long and shows Chaffin crushing numerous mice, baby mice and rats under the heel of her shoe and under her bare feet. Part of the videotape depicts a mouse being held down and Chaffin crushing the animal to death; the mice and rats were "stepped on to the point where intestines and innards are torn apart and taken out of them. It is then smashed into the ground until the mouse or rat or pinkie appears to be dead and it stops moving." Involved were 12 animals consisting of four mice, six baby mice and two rats. They were all taunted, maimed, tortured, mutilated, disemboweled and ultimately slowly killed under the heel of a shoe. The videotape depicts Chaffin stepping on the shoulder of a mouse with the heel of her shoe, causing the mouse to spin in circles, then Chaffin crushing its head. In one instance a mouse is taped down by its tail to prevent escape before being crushed to death. These videotapes were produced by codefendant Chaffin and defendant to sell for profit. Defendant obtained the animals from The Feed Barn, a store that sells feeder mice used to feed other animals.

I

## PENAL CODE SECTION 597, SUBDIVISION (a) APPLIES TO DEFENDANT

█ Appellant contends that Penal Code section 597, subdivision (a), does not apply to rodents, which are different from animals within the meaning of the statute in that they may be killed at any time by any means because they represent a health and property hazard and are "known as dangerous to life or property" (Pen. Code, § 599c), thus, are exempt under Penal Code section 597, subdivision (a).

Penal Code section 597, subdivision (a) in pertinent part provides: "Except as provided in subdivision (c) of this section or Section 599c, every person who maliciously and intentionally maims, mutilates, tortures, or wounds a living animal, or maliciously and intentionally kills an animal, is guilty of an offense punishable by imprisonment in the state prison . . . ."

Penal Code section 599c provides: "No part of this title shall be construed as interfering with any of the laws of the state known as the 'game laws,' or any laws for or against the destruction of certain birds, nor must this title be construed as interfering with the right to destroy any venomous reptile, or any animal known as dangerous to life, limb, or property, or to interfere with the right to kill all animals used for food, or with properly conducted scientific experiments or investigations performed under the authority of the faculty of a regularly incorporated medical college or university of this state."

Penal Code section 599b provides in part: "In this title the word 'animal' includes every dumb creature; the words 'torment,' 'torture,' and 'cruelty' include every act, omission, or neglect whereby unnecessary or unjustifiable physical pain or suffering is caused or permitted . . . ."

Penal Code section 597, subdivision (a), makes it unlawful to mistreat any "living animal," which applies to rodents, and the term "animal" includes every "dumb creature" (Pen. Code, § 599b) which also applies to rodents, and appellant does not contend otherwise. And no reasonable person can argue that the malicious and intentional " 'torment,' 'torture,' and 'cruelty,' " defined in Penal Code section 599b and as applied here, did not cause "unnecessary or unjustifiable physical pain or suffering" to the mice, rats and baby mice. However, appellant contends that rodents are "animal[s] known as dangerous to life, limb, or property" under section 599c, and have been "historically treated" as such "because of the disease they carry [i.e., bubonic plague, hantavirus])," and "may be eradicated anytime using any means," referring to traps and poison commonly used by homeowners and restaurants to kill mice and rats. As to this defendant, we reject the contention.

First, "any living animal" (Pen. Code, § 597, subd. (a)) used in various state cruelty to animals statutes applies to domesticated animals and wild animals in captivity (*State v. Cleve* (1999) 127 N.M. 240 [980 P.2d 23, 27], raccoons and any dumb living creature (*Wilkerson v. State* (Fla. 1981) 401 So.2d 1110, 1111), and any dumb creature (*State v. Kaneakua* (1979) 61 Hawaii 136 [597 P.2d 590, 592]). Both parties agree, as do we, there is no California case in point, and this is a case of first impression.

Second, the rats, mice and baby mice used by defendant in his crush video were not wild animals, but bred for a domestic purpose—food for other animals. However, they were not used by defendant for this purpose, but to intentionally and maliciously maim, mutilate, torture and wound before ultimately slowly killing them, all for sexual gratification of others and for

commercial gain. They differ from the rodents that run wild—rats and mice, denizens of alleys, garbage cans, and sewers—that carry disease to restaurants and households and destroy property. The rats and mice used by defendant were not wild nor were they destroyed by him as hazardous to health or property. He obtained the animals from The Feed Barn, a store which sells feeder mice used to feed other animals. These bred rats and mice do not run wild but are kept in cages, and are not "dangerous to life, limb or property." They clearly do not fall within the exception described in Penal Code section 599c.

Nor does Penal Code section 599c permit the destruction of all mice and rats, wild or bred, by "using any means," as contended by him. Penal Code section 599c applies only to specific animals known to pose a danger to life, limb or property. Among them are not the animals used by defendant bred and raised in captivity. We belabor this point because this, too, is the reason Food and Agricultural Code section 5401, relied on by appellant, does not support his argument that all rats and mice "may be eradicated anytime." This section provides that "[a]ny *premises* . . . which are infected or *infested* with any *pest*, or premises where any pest is found, are a *public nuisance* . . . ." (Italics added.) This statute cannot apply to defendant under the evidence in this case. Here the rats and mice cannot be classified as "pests" because they were bred and kept in cages; there was no "infestation" of any "premises," for defendant purchased them and voluntarily brought them to Chaffin's home where the video was made, not to eradicate as a public nuisance, but for the private purpose to intentionally and maliciously torture, maim, mutilate wound and ultimately kill.

Nor does Health and Safety Code section 116125 aid appellant. This section, too, requires one possessing "any place that is *infested* with rodents" to destroy them "by poisoning, trapping, and other *appropriate* means." (Italics added.) Appellant argues that "crushing rodents is not proscribed" therefore, what he did "was clearly lawful." "Appropriate means" to eradicate the "pests" surely does not include "any means available" as urged by appellant, nor does it embrace maliciously and intentionally maiming, taunting, torturing, wounding and disemboweling before crushing the mutilated animal to a slow death. But the fallacy in appellant's argument as to the applicability of both of the above sections is that the evidence does not support the necessary premise that the rats and mice were killed for health and safety purposes. The facts are, that they were voluntarily brought to the "premises" or "place" to make crush videos, and were ultimately killed after maiming, torturing and mutilating the animals, all for profit and for the sexual gratification of others.

Third, even if the bred mice and rats used by defendant could be classified as animals "known as dangerous to life, or property," it is one thing to kill

by traps or poison, rats and mice that run wild and create a health hazard, but quite another to intentionally and maliciously maim, mutilate, and torture the animals until they die, for the purpose of making and selling videotapes for commercial gain.[3] Known as crush videos, they are fetish videos in which small animals are taunted, maimed, tortured and ultimately crushed to death under the heel of a shoe or bare feet of a provocatively dressed woman. The live animals are stepped on until their intestines and innards are torn apart, then disemboweled after which the animal is smashed on the ground until it dies or stops moving. The videotape exhibit depicts the codefendant talking to four mice, six baby mice and two rats, taunting them, stepping on the shoulder of a mouse with the heel of her shoe, causing the animal to spin around in circles before crushing its head. It also shows a mouse taped to the floor by its tail to prevent its escape before being mutilated and crushed to death.

Assuming Penal Code section 599c could be construed to permit the destruction of all mice and rats, wild or bred and domesticated, as deadly or dangerous or destructive, it does not permit defendant to intentionally and maliciously torture or maim or taunt or mutilate or wound or disembowel and kill any living animal in the process. As the trial judge stated, "it is my view beyond a reasonable doubt that what I saw on that tape was malicious torture . . . no animal, whether the animal is a deer or rat or a rodent, a mouse—no animal under the Fish and Game Code, or any other code, is subject to that kind of malicious torture that I saw."

Our construction of Penal Code sections 597, subdivision (a), 599b and 599c is supported by the plain language used in those sections, "giving the words their ordinary meaning" (*People v. Birkett* (1999) 21 Cal.4th 226, 231 [87 Cal.Rptr.2d 205, 980 P.2d 912]; *People v. Morris* (1988) 46 Cal.3d 1, 15 [249 Cal.Rptr. 119, 756 P.2d 843]), a reasonable meaning (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 929 [93 Cal.Rptr.2d 216]; *People v. Mobley* (1999) 72 Cal.App.4th 761, 783 [85 Cal.Rptr.2d 474]) and admitting a " 'construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute. . . .' " (*People v. Rubalcava* (2000) 23 Cal.4th 322, 328 [96 Cal.Rptr.2d 735, 1 P.3d 52]; *People v. Caudillo* (1978) 21 Cal.3d 562, 576 [146 Cal.Rptr. 859, 580 P.2d 274].)

Even if the killing of mice and rats should fall within the exception to Penal Code section 597, subdivision (a), as set up in Penal Code section

---

[3]On December 9, 1999, President Clinton signed into law H.R. No. 1887, now 18 United States Code section 48, which prohibits interstate commerce involving, and commercial gain from, the distribution of crush videos, making such acts punishable by fine and/or not more than five years' imprisonment.

599c, intentionally and maliciously torturing, mutilating, wounding, tormenting and maiming the animals causing unnecessary physical pain or suffering before slowly killing them do not.

## II

### CHALLENGE TO VAGUENESS OF PENAL CODE SECTION 597, SUBDIVISION (a)

Appellant contends that "the statute [(Pen. Code, § 597, subd. (a))], as applied to rodents [is] constitutionally infirm as void for vagueness," violating his due process rights "for failing to notify the public that one who exterminates rodents for the 'wrong purpose' is criminally liable while one who exterminates rodents for another purpose [protection of health and property] is not subject to prosecution." Appellant ignores two cogent points—it is not only the extermination of the animals that is at issue, but how it is carried out—the intent and the purpose; and it is not all rodents that are at issue, but only those bred in captivity for use of food for other domesticated animals, that are not pests that infest premises, are caged and cannot run wild, and pose no danger spreading disease or destroying property.

Respondent contends that appellant lacks standing to challenge Penal Code section 597 as vague because "his conduct clearly falls under the statute's purview," and "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." (*Broadrick v. Oklahoma* (1973) 413 U.S. 601, 610 [93 S.Ct. 2908, 2915, 37 L.Ed.2d 830]; *In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305]; *Bailey v. City of National City* (1991) 226 Cal.App.3d 1319, 1330 [277 Cal.Rptr. 427].) If a statute "clearly applies to a criminal defendant's conduct, the defendant may not challenge it on grounds of vagueness." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1095 [40 Cal.Rptr.2d 402, 892 P.2d 1145]; *Parker v. Levy* (1974) 417 U.S. 733, 756 [94 S.Ct. 2547, 2561, 41 L.Ed.2d 439].)

Appellant challenges his conviction on the ground that those in other situations not before the court, such as those who use traps or poison to exterminate rats and mice may also be committing unlawful acts because whether the killing of rodents is lawful as pests harmful to health and property or unlawful under Penal Code section 597, subdivision (a), they suffer the same effects and the exterminator may feel "joy in trapping a rat in his attic and listening as it slowly dies," or gain pleasure from baiting or

poisoning "a rodent causing a slow and painful death" because of damage it did to the wiring of his house, and asks, is the exterminator "subject to prosecution?" However, defendant did not use traps or poison and the rodents were intentionally and maliciously tormented, tortured, maimed, mutilated, disemboweled and ultimately slowly killed, not to exterminate them for health reasons nor to save property from being destroyed, but for videotaping for sexual gratification and commercial profit. Section 597, subdivision (a) "clearly applies to defendant's conduct." Thus, for lack of standing of appellant to challenge section 597, subdivision (a), we reject his contention that it is "constitutionally vague [in] that it fails to distinguish between lawful killing of rodents and unlawful."

## DISPOSITION

The judgment is affirmed.

Johnson, J., and Neal, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 30, 2001.